**In re Jerome Thomas LaFOND and Charlotte Agnes LaFond, Debtors.**

**Bankruptcy No. 5–84–41.**

United States Bankruptcy Court, D. Minnesota, Fifth Division.

Dec. 20, 1984.

---

Shawn M. Dunlevy, Duluth, Minn., for PCA.

James P. Fossum, Brainerd, Minn., for debtors.

## ORDER

GREGORY F. KISHEL, Bankruptcy Judge.

The above-captioned matter came on before the undersigned United States Bankruptcy Judge on October 24, 1984, upon Debtors' Motion for Lien Avoidance pursuant to 11 U.S.C. § 522(f). Debtors appeared personally and by their attorney, James P. Fossum, Legal Aid Service of Northeastern Minnesota. Production Credit Association of St. Cloud (hereinafter "PCA") appeared by its attorney, Shawn M. Dunlevy. Upon the testimony adduced at said hearing, the arguments and Memoranda of Law submitted by counsel, and all of the other files and records herein, the Court makes the following Order.

## FINDINGS OF FACT

1. That Debtors filed their Petition for Relief under Chapter 7 of the Bankruptcy Code in this Court on February 6, 1984.

2. That, prior to April, 1981, Debtors resided in Medina, Minnesota on a farm, where they raised beef cattle. Debtor Jerome Thomas LaFond was employed up to April, 1981, as a police officer by the City of Medina.

3. That in April, 1981, Debtors entered into a contract for deed for the purchase of certain farm property in Aitkin County, Minnesota, moved to this property, and began beef cattle, dairy and crop farming on this property. Both Debtors worked in their farming activities. Since April, 1981, Debtor Jerome LaFond has been employed on a part-time basis as a police officer by the City of McGregor, Minnesota.

4. That Debtors' contract for deed for the purchase of their farm was cancelled by the vendors thereon in November, 1983, and Debtors vacated this property in November, 1983.

5. That since November, 1983, Debtors have occupied rented land in Aitkin County, Minnesota, on which they have raised beef cattle belonging to Debtor Charlotte LaFond's mother and to Debtors. Debtor Jerome LaFond has continued his employment as a police officer with the City of McGregor, Minnesota.

6. That Debtors' federal tax returns for 1981 through 1983 show that during those years, Debtors Jerome LaFond received the following income from employment and farming (all amounts in parentheses are net losses):

|  | Employment as Police Officer | Gross Farm Income | Taxable Farm Income (Schedule F) |
|---|---|---|---|
| 1981 | $14,011.06 | $16,768.47 | ($14,415.05) |
| 1982 | $ 7,524.01 | $20,780.49 | ($20,587.68) |
| 1983 | $ 8,991.00 | $17,551.64 | ($21,658.21) |

7. That, before Debtors moved to Aitkin County, Minnesota, they owned certain used farming equipment free and clear of all liens or encumbrances, which they had purchased with the proceeds of the sale of their former homestead in Medina, Minnesota. This equipment included the following:

John Deere 4010 tractor with cab
John Deere F–145H 4-bottom plow
Hesston PT10 haybine
Oliver 11' disk
John Deere 494 corn planter
Forage King silage box and wagon
Columbia 6-ton wagon with rack
John Deere # 25 chopper with hitch
Fox forage blower
Kovar 4-section harrow
Cylinder and hoses.

8. That in April, 1981 Debtors applied for an operating loan from PCA. On April 30, 1981, Debtors entered into a "Basic Loan Agreement", Security Agreement, and "Supplemental Loan Agreement" with the PCA for an operating loan. Under the terms of the Security Agreement, Debtors granted to PCA a security interest in "all equipment, motor vehicles and fixtures, all accessions thereto, and all spare parts and special tools for such equipment," as well as in livestock, poultry, and milk. A Financing Statement perfecting this lien was filed in the office of the Aitkin County Recorder on May 7, 1981. Debtors loan from PCA was apparently renewed by one or several successive Supplemental Loan Agreements, the final one of which was dated May 26, 1983. The final Supplemental Loan Agreement and Security Agreement continued the prior security interest in equipment, motor vehicles, and fixtures.

9. That Debtors now seek to avoid PCA's security interest in the following equipment (hereinafter "the equipment"), which was of the following value as of February 6, 1984, and all of which is now and always has been in the possession of Debtors or their agents:

| | |
|---|---|
| John Deere 4010 tractor with cab | $5,500.00 |
| John Deere F–145H 4-bottom plow | $350.00 |
| Hesston PT10 haybine | $2,100.00 |
| Oliver 11' disk | $200.00 |
| John Deere 494 corn planter | $350.00 |
| Forage King silage box and wagon | $750.00 |
| Columbia 6-ton wagon with rack | $400.00 |
| John Deere # 25 chopper with hitch | $400.00 |
| Fox forage blower | $250.00 |

| | |
|---|---|
| Kovar 4-section harrow | $100.00 |
| Cylinder and hoses | $75.00 |
| Total | $10,475.00 |

10. That no portion of the proceeds of the loan of April 30, 1981, or any subsequent advance thereon, was used by Debtors to purchase any of the items of farming equipment listed in Finding of Fact 9.

11. That PCA asserts a security interest in an Allis-Chalmers # 160 tractor with loader and a John Deere # 410 round bailer which were purchased by Debtors after they moved to Aitkin County, Minnesota, and which are presently in the possession of PCA or its agents. Debtors have waived any claim or right to avoid PCA's security interest in these items of equipment.

12. That all of the items of the equipment on which Debtors seek to avoid PCA's security interest are commonly understood by persons in the farming trade and the public at large as farming implements or tools.

13. That all of the items of equipment on which Debtors seek to avoid PCA's security interest are commonly used by persons in the farming trade in the course of their farming activities, and are necessary to the operation of a farm of the nature of Debtors' farm.

14. That on Amended Schedule B–4 of their bankruptcy Petition, Debtors have claimed as exempt under 11 U.S.C. § 522(d)(5) and § 522(d)(6), in the so-called "federal bankruptcy exemptions", all of the equipment, and the following items of personal property of the following values:

| | |
|---|---|
| 1981 Dodge Omni | $800.00 |
| (equity above § 522(d)(2) exemption) | |
| 1968 GMC pick-up | $200.00 |
| Topper/camper | $300.00 |
| Boat, motor, trailer | $500.00 |
| Cash | $50.00 |
| Riding lawnmower | $100.00 |
| Woodworking table | $3,000.00 |
| Life insurance cash surrender value | $200.00 |
| Total | $5,150.00 |

CONCLUSIONS OF LAW

Debtors' Motion is premised upon 11 U.S.C. § 522(f), which provides in pertinent part as follows:

(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in the property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

.    .    .    .    .

(2) a nonpossessory, nonpurchase-money security interest in any—

(B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor ...

In order to avoid a lien on property under § 522(f)(2)(B), the debtor must prove the existence of four elements:

1. That the debtor has an interest in the property;

2. That the creditor's lien impairs an exemption of the property to which the debtor would have been entitled under 11 U.S.C. § 522(b), in the absence of the lien;

3. That the lien is a nonpossessory, nonpurchase-money security interest in the property;

4. That the lien attached to implements, professional books, or tools of the trade of the debtor or a dependent of the debtor.

*In Re Quidley,* 39 B.R. 362, 365 (Bankr.E.D.Va.1984).

PCA raises three defenses to Debtors' Motion. First, it argues that Debtors were and are not engaged in the trade of farming and therefore may not allege that the equipment was an implement or tool of their trade. In support of this position, PCA argues that Debtors are not "farmers" within the meaning of the statutory definition set forth in 11 U.S.C. § 101(17) and, alternately, that Debtors abandoned the trade of farming at some point between the cancellation of the contract for deed on

their prior farmstead and the Meeting of Creditors in these proceedings. Second, PCA argues that the meaning of "implements" or "tools of the trade" of a farmer-debtor under § 522(f) does not encompass large items of farming equipment. Third, PCA apparently argues that the value of the equipment exceeds the parameters of the "spillover" exemption available to Debtors under 11 U.S.C. § 522(d)(5) and, therefore, Debtors' Motion must be denied in whole or in part as its lien does not impair an exemption to which Debtors would have been entitled. The Court will deal with these issues individually.

### A. Whether Debtors are engaged in the trade of farming.

11 U.S.C. § 522(f) grants a debtor the remedy of avoiding a secured creditor's lien against certain enumerated classes of personal property under certain circumstances. Congress' main goal in enacting this provision was to afford a debtor the fullest and most realistic prospect of making his "fresh start". By freeing certain protected classes of property from pre-bankruptcy security interests, the debtor would not be forced either to give up the property to the secured creditor or to reaffirm the debt secured by the property. H.R.REP. No. 595, 95th Cong., 1st Sess. 126–7 (1977), U.S.Code Cong. & Admin. News 1978, p. 5787; *In Re Meyers*, 2 B.R. 603, 605 (Bankr.E.D.Mich.1980). In granting a debtor the power to avoid liens against household goods and furnishings, Congress was concerned with combatting abusive post-bankruptcy practices by certain sectors of the consumer lending industry. H.R.REP. No. 595, 95th Cong., 1st Sess. 127 (1977); *In Re Morris*, 12 B.R. 321, 340–50 at n. 62 (Bankr.N.D.Ill.1981). However, in granting a debtor the power to avoid security interests in implements and tools of the trade of a debtor, Congress appears to have been concerned not only with the possibility of post-petition creditor abuse but also with the goal of allowing a working debtor to continue the practice of his trade or profession and the generation of income from it. *In Re Duchesne*, 21

B.R. 390, 391 (Bankr.N.D.N.Y.1982). Since the lien avoidance remedy is granted to a debtor for the purpose of protecting and continuing the debtor's trade or profession, the Court must determine the nature of the debtor's trade or profession.

PCA argues that the Court must apply the Bankruptcy Code definition of "farmer" to determine whether Debtors are engaged in the trade of farming. Under 11 U.S.C. § 101(17),

(17) "farmer" means person that received more than 80 percent of such person's gross income during the taxable year of such person immediately preceding the taxable year of such person during which the case under this title concerning such person was commenced from a farming operation owned or operated by such person.

Debtors have never made a net profit from farming (whether operating or as defined under income tax law), and Debtor Jerome LaFond has derived income from non-farming employment which appears to have been his family's major source of support for the several years preceding Debtors' Petition. In 1983, neither Debtors' gross nor net farm income exceeded 80% of their gross family income. PCA therefore argues that Debtors are not farmers and therefore cannot have implements or tools of the farming trade. Several Courts have taken this approach. *In Re Liming*, 22 B.R. 740 (Bankr.W.D.Okla.1982); *In Re Holman*, 26 B.R. 110 (Bankr.M.D.Tenn. 1983). These courts do not recognize that this approach creates an irrebuttable presumption which prevents many debtors legitimately engaged in farming from utilizing the lien avoidance remedy. *In Re Yoder*, 32 B.R. 777, 781 (Bankr.W.D.Pa.1983). The legislative history of the Bankruptcy Code does not bear out their interpretation: "The purpose of the definition is for use in the sections of the proposed bankruptcy code prohibiting involuntary cases against farmers". H.R.REP. No. 595, 95th Cong., 1st Sess. 311 (1977), U.S.Code Cong. & Admin.News 1978, p. 6268. Further, it is

significant that § 101 contains definitions for only five trades or occupations.[1] Had Congress intended that special definitions of particular trades or occupations be imposed for the purposes of proceedings under § 522(f), it would have defined more trades or occupations in § 101, and would have specified in § 522 that these special Bankruptcy Code definitions would apply. The Court concludes that Congress intended that the definition of "farmer" at § 101(17) was to be applied only where the word "farmer" itself was used in the Bankruptcy Code as, for instance, in 11 U.S.C. § 303(a).

A more reasonable test to determine whether a debtor is a "farmer" for the purpose of a lien avoidance motion was set forth by the Court in *In Re Yoder, supra.* The *Yoder* Court held that a debtor need only prove that he is legitimately engaged in a trade which currently and regularly uses the specific implements or tools exempted and on which lien avoidance is sought. *See also In Re Decker*, 34 B.R. 640, 641 (Bankr.N.D.Ind.1983). Under this more flexible and realistic standard, the Court is not barred from finding that a debtor is engaged in the farming trade even though he derives the bulk of his personal income from sources outside farming. *See, e.g., In Re Lipe*, 36 B.R. 597 (Bankr.W.D.Mo.1983).

PCA further argues that Debtors have abandoned the trade of farming, based upon the loss of their prior farmstead in a cancellation of contract for deed proceeding and upon Debtors' testimony at the Meeting of Creditors herein. While it is true that Debtors have had to scale back their operation considerably due to financial stress, Debtor Jerome LaFond testified unequivocally that Debtors wished to continue the business of beef cattle farming on

their rented land as they had done on their own land for many years. Debtors have no present intent to abandon farming and, in fact, are presently engaged in small-scale farming as a trade. They are raising beef cattle for their own use and sale and for Debtor Charlotte LaFond's mother, and hope to expand their herd as their finances permit. As former Judge Patrick J. McNulty of this Court held,

> Abandonment of a trade requires an intentional abandonment ... It is not for this Court to judge the wisdom, or even the feasibility of [debtors] attempting to resume farming. This court finds nothing in the law which conditions the exemption for tools of a trade upon the debtor successfully pursuing that trade. If debtors intend to be farmers, so be it. The Court finds that [debtors] are farmers ...

*In Re Pommerer*, 10 B.R. 935, 942, 4 C.B. C.2d 766, 775–6 (Bankr.D.Minn.1981). *See also In Re Eagan*, 16 B.R. 439, 441 (Bankr. N.D.N.Y.1982). This conclusion is not barred by the fact that Debtor Jerome LaFond derives income from his outside employment. Given the economics of small-farm agriculture under the harsh climatic conditions of Northeastern Minnesota, it is nearly impossible for most farmers to subsist without outside employment.

*B. Whether items of large farming equipment are "implements" or "tools of the trade" of farming within the meaning of 11 U.S.C. § 522(f)(2).*

■ PCA argues at some length that the items of large and relatively costly farming equipment on which Debtors seek to avoid its lien are not "implements" or "tools of the trade" of a farmer within the meaning of § 522(f)(2)(B).[2] PCA cites the opinion of

---

**1.** Specifically, for "accountant", "attorney", "commodity broker", and "stockbroker". See 11 U.S.C. § 101(1), 101(3), 101(5), and 101(46). It is fairly obvious that the first two professions are defined for the purposes of Chapter 3 of the Code, and the second two are defined for the purposes of Subchapters III and IV of Chapter 7 of the Code.

**2.** Specifically, PCA argues that Congress intended that the avoidance remedy under § 522(f) was to apply only to liens against items of property of negligible or no resale value. In their Memorandum of Law, Debtors characterize this issue as being whether the "spillover" provisions of § 522(d)(5) can be used to enhance Debtors' lien avoidance powers on security of the particular types described in

Judge William A. Hill of this Court in *In Re Middleton*, 37 B.R. 36 (Bankr.D.Minn. 1983) in support of its argument, as well as *In Re Yparrea*, 16 B.R. 33 (Bankr.D.N. Mex.1981) and *In Re O'Neal*, 20 B.R. 13 (Bankr.E.D.Mo.1982).

However, Judge Hill's ruling on this issue in *In Re Middleton* was overturned on appeal to the United States District Court for the District of Minnesota. *Middleton v. Farmers State Bank of Fosston*, 41 B.R. 953 (D.Minn.1984). On appeal, Chief Judge Miles W. Lord of the District Court found that "as a practical matter, a narrow construction [of the definition of 'implements' and 'tools of the trade' under § 522(f)(2) ] punishes the farmer for being inadvertently dependent on expensive tools of the trade as compared to other trades more dependent on smaller hand tools'. *Middleton v. Farmers State Bank of Fosston, supra*, at 955. Under the District Court opinion, the test for allowance of lien avoidance on farm equipment is threefold:

1. The Court must determine whether the debtors were farmers at the time the lien avoidance proceedings were commenced;

2. The Court must then determine whether the equipment in question is commonly understood as "implements" or "tools" of the farming trade;

3. The Court must then determine whether the equipment in question is commonly used by persons employed in the farming trade.

In so holding, the District Court elected to follow the line of cases adopting a more expansive definition of "implements" and "tools of the trade" in the context of a farmer-debtor. *See Augustine v. U.S., supra; In Re Currie*, 34 B.R. 745 (D.Kan. 1983); *In Re Yoder, supra; In Re Liming, supra; In Re Decker, supra. Compare In Re Quidley, supra*, at 367.[3]

▮ The Court has concluded that Debtors are engaged in the farming trade and were so engaged as of the date of filing of both their Petition and their Motion for Lien Avoidance in this Court. The equipment consists of items which are all commonly understood as farming implements or tools by the general public. All of the equipment is commonly used by farmers in the trade of beef cattle, dairy and crop farming. Therefore, the equipment does constitute "implements" or "tools of the trade" of the Debtors and Debtors' lien avoidance motion is not barred on this ground.

*C. Whether the value of the equipment exceeds the parameters under 11 U.S.C. § 522(d)(5) and § 522(d)(6).*

▮ At the trial of this matter, both parties presented evidence on the question of the value of the equipment. The parties stipulated to the admissibility of documentary evidence on value; neither party adduced live testimony by an expert witness. Debtors' evidence on value consisted of their own written summary of price quotations Debtors obtained from several different implement dealers by telephone calls, sight unseen. PCA's evidence consisted of a written estimate prepared by a local im-

§ 522(d)(3) and § 522(d)(6), which is worth more than the specific value limitations under those subsections. This issue is separate from the one framed by PCA, and PCA has conceded it to Debtors. The Court independently concludes that the "spillover" provision enhances Debtors' lien avoidance powers to the extent that it allows exemption of value in the types of property subject to lien avoidance under § 522(f) which is greater than any values specifically set in § 522(d). *Augustine v. U.S.*, 675 F.2d 582, 586 (3rd Cir.1982); *In Re Dubrock*, 5 B.R. 353, 356 (Bankr.W.D.Ky.1980); *In Re Dillon*, 18 B.R. 252, 256 (Bankr.E.D.Cal.1982); *In Re Duchesne, supra*, at 392; *In Re Metzig*, 33 B.R. 620, 622 (Bankr.N.D.Tex.1983).

**3.** Since oral argument in this case, the Eighth Circuit has ruled that a farmer-debtor may not utilize lien avoidance under § 522(f)(2)(A) against a creditor's security interest in 210 pigs, holding that the debtors in that case had failed to show that the pigs were held by them for "personal, family or household use". *In Re Thompson*, 750 F.2d 628 (8th Cir.1984). *In Re Thompson* is distinguishable from the instant case, as the debtors there failed to prove the requisite use of the collateral under § 522(f)(2)(A). Debtors herein have proven the requisite use of the equipment under § 522(f)(2)(B).

plement dealer after a thorough inspection. For the purposes of determining the value of the equipment, the Court has adopted the values set forth in PCA's evidence; it was based upon a personal inspection of the equipment in its actual condition, and is hence more credible than Debtors' evidence.

Under 11 U.S.C. § 522(d)(6), each of the debtors is entitled to exempt implements and tools of the trade of the value of $750.00.[4] In addition, under § 522(d)(5), each of the Debtors is entitled to exempt up to $7,900.00 in value in "any property," as Debtors did not claim an exemption under § 522(d)(1) for real or personal property used by them as a residence.[5] The total value of Debtors' property to which they apply their exemptions under § 522(d)(5) and § 522(d)(6) is $15,625.00. Since Debtors have an aggregate available exemption under these two sections of $17,300.00, it is clear that the value of the equipment subject to the liens which Debtors seek to avoid, combined with the value of their other property exempted under § 522(d)(5), does not exceed the value limitations. Therefore, PCA's lien does in fact impair an exemption to which Debtors would otherwise be eligible.

### CONCLUSION

■ The Court finds and concludes that Debtors have shown the existence of all four elements required under 11 U.S.C. § 522(f)(2), and that they are therefore entitled to avoid PCA's lien in the equipment.

WHEREFORE, IT IS HEREBY ORDERED:

1. That the relief for which Debtors pray is granted.

2. That the lien against the following personal property:

John Deere 4010 tractor with cab
John Deere F–145H 4-bottom plow
Hesston PT10 haybine
Oliver 11' disk
John Deere 494 corn planter
Forage King silage box and wagon
Columbia 6-ton wagon with rack
John Deere # 25 chooper with hitch
Fox forage blower
Kovar 4-section harrow
Cylinder and hoses

created under a Security Agreement dated April 30, 1981, and under a Security Agreement dated May 26, 1983, as evidenced by a Financing Statement filed in the office of the Aitkin County Recorder as Document No. 035780 on May 7, 1981, between Debtors and PCA is null and void.

---

4. The Court concludes that Debtor Charlotte La-Fond is also engaged in the farming trade. *In Re Pommerer, supra,* 10 B.R. at 942, 4 C.B.C.2d at 775; *In Re Flake,* 33 B.R. 275 (Bankr.W.D. Wis.1983).

5. Because Debtors' Petition in this Court was filed before October 8, 1984, the effective date of the non-jurisdictional amendments to the Bankruptcy Code enacted in the Bankruptcy Amendments and Federal Judgeship Act of 1984, Debtors are entitled to utilize the full "spillover" provisions of former § 522(d)(5) for exemption purposes.