**PRODUCTION CREDIT ASSOCIATION OF ST. CLOUD, Appellant,**

v.

**Jerome Thomas LaFOND and Charlotte Agnes LaFond, Appellees.**

Civ. No. 5–85–55.
Bankruptcy No. 5–84–41.

United States District Court,
D. Minnesota,
Fifth Division.

July 8, 1985.

John N. Nys, Johnson, Fredin, Killen, Thibodeau & Seiler, P.A., Duluth, Mn., for appellant.

James P. Fossum, Legal Aid of Northeastern Minnesota, Brainerd, Mn., for appellees.

## ORDER

MILES W. LORD, Senior District Judge.

Appellant Production Credit Association (PCA) appeals an adverse decision of the Bankruptcy Court. This court has jurisdiction. 28 U.S.C. § 158(a). Appellant requests oral argument as provided by Bankruptcy Rule 8012. After examination of the briefs and record, this court concludes that oral argument is not needed. The facts and legal arguments are adequately presented in the papers and the decisional process would not be significantly aided by oral argument. *See Bankr.R.* 8012.

*Facts*

Appellees, Jerome and Charlotte LaFond, originally resided in Medina, Minnesota, where they raised beef cattle. During that time, Jerome LaFond also worked as a police officer for city of Medina. In April, 1981, the LaFonds sold their farm and entered into a contract for deed for the purchase of farm property in Aitkin County, Minnesota. They moved and began raising beef and dairy cattle and crop farming. Jerome LaFond again obtained part-time work as a police officer, this time for the city of McGregor. In November, 1983 the LaFonds lost the Aitkin property when the contract for deed was cancelled. They currently rent land on which they raise beef cattle jointly owned by themselves and by Charlotte LaFond's mother.

On February 6, 1984, the LaFonds filed a voluntary petition in bankruptcy under Chapter 7 of the Bankruptcy Code. Appellant PCA had made an operating loan to the LaFonds in April, 1981, secured by a lien in "all equipment, motor vehicles and fixtures, all accessions thereto, and all spare parts and special tools for such

equipment," as well as in livestock, poultry, and milk. Debtors seek to avoid this lien on certain items of property valued at $10,-475, which they claim constitute tools or implements of the trade of farming and are thus exempt under 11 U.S.C. § 522(f)(2)(B). PCA holds a duly perfected, nonpossessory, non-purchase money security interest in all of the items of property for which exemption is claimed.

The present action involves debtors' Motion for Lien Avoidance. A hearing was held on October 24, 1985 before Bankruptcy Judge Gregory F. Kishel. In a decision dated December 20, 1984, debtors' motion was granted. *See In Re LaFond*, 45 B.R. 195 (Bankr.D.Minn.1984). PCA now appeals this decision, contending: 1) the evidence fails to support a conclusion that farming is the debtors' primary occupation; 2) the items of equipment in dispute were not "used" in the debtors' trade; and 3) large items of farm equipment are not properly the subject of lien avoidance proceedings under 11 U.S.C. § 522. After reviewing the file, briefs, and proceedings herein, this court affirms the decision of the Bankruptcy Court.

*Discussion*

The findings of fact of a bankruptcy judge must be upheld unless "clearly erroneous." *Bankr.R.* 8013. This court is, however, free to reach its own conclusions as to matters of law. *E.g., In Re Newcomb*, 744 F.2d 621, 625 (8th Cir.1984); *In Re Schwens, Inc.*, 20 B.R. 638, 640 (D.Minn.1982).

### I.

■ Appellant PCA first contends the Bankruptcy Court erred in finding that debtors' primary occupation was farming because no evidence was introduced to show that Charlotte LaFond worked on the farm. Concededly, Charlotte LaFond did not testify at the hearing and her husband did not testify as to her activities around the farm. Debtors note, however, that during an earlier hearing before the same bankruptcy judge, testimony was taken regarding Charlotte LaFond's farming activi-

ties. The record of this previous hearing is not now before this court and is not properly at issue here. Nevertheless, with nothing in this record to suggest otherwise, it is entirely reasonable to assume that Charlotte LaFond must have worked on the farm. "One would have to blind oneself to reality not to ... recognize that a small farm in Minnesota is a family occupation. [Debtor's wife], therefore, must also be considered a farmer." *In Re Pommerer*, 10 B.R. 935, 942 (Bankr.D.Minn.1981). The Bankruptcy Court's finding that Charlotte LaFond is also engaged in the farming trade is thus not clearly erroneous.

■ PCA next contends that the Bankruptcy Court erred in finding that the LaFonds' primary occupation is farming because they fail to qualify as farmers under 11 U.S.C. § 101(17) which reads:

(17) "farmer" means person that received more than 80 percent of such person's gross income during the taxable year of such person immediately preceding the taxable year of such person during which the case under this title concerning such person was commenced from a farming operation owned or operated by such person.

The LaFonds' income tax returns for the past three years indicate that they have failed to make a net profit from farming and that Jerome LaFond's non-farming employment was their major source of support for these years. PCA urges that because debtors did not meet the 80 percent test set out in 11 U.S.C. § 101(17), they do not qualify as farmers under the Bankruptcy Code.

For several reasons, however, this restrictive definition should not be applied in this case. Requiring farmers to meet the 80 percent test would unfairly preclude many debtors legitimately engaged in farming from utilizing the lien avoidance remedy. Moreover, § 101 provides definitions for only five occupations or trades, evidence that Congress did not intend these definitions to be all inclusive and applicable in all cases. The language of § 522 does not expressly require application of § 101

definitions to lien avoidance procedures. Legislative history notes that the purpose of the definition of farmer contained in § 101(17) is "for use in the sections of the proposed bankruptcy code prohibiting *involuntary* cases against farmers." H.R. Rep. No. 595, 95th Cong., 2d Sess. 311, *reprinted in* 1978 U.S. Code Cong. & Ad. News 5963, 6268 (emphasis added). In this case, the Bankruptcy Court concluded that "Congress intended that the definition of 'farmer' at § 101(17) was to be applied only where the work 'farmer' itself was used in the Bankruptcy Code as, for instance, in 11 U.S.C. § 303(a)." *In Re LaFond*, 45 B.R. at 200. This court agrees and refuses to apply such a restrictive definition without express direction from Congress.

■ A more realistic definition should take into account the intensity of a debtor's past farming activities and the sincerity of his intentions to continue farming, as well as evidence that debtor is legitimately engaged in a trade which currently and regularly uses the specific implements or tools exempted and on which lien avoidance is sought. *See Middleton v. Farmers State bank of Fosston*, 41 B.R. 953, 955 (D.Minn. 1984); *In Re Yoder*, 32 B.R. 777 (Bankr.W. D.Pa.1983). In this light, there is ample evidence to support finding that debtors are farmers. They have been engaged in farming at least since 1981 and have invested heavily in land and equipment. Their intent to continue farming is evidenced by Jerome LaFond's testimony to that effect and by the fact that when forced to move from their foreclosed farm in 1983, they moved to another piece of property suitable for cattle raising. Jerome LaFond's part-time employment as a police officer does not necessarily destroy his primary occupational pursuit. *See In Re Pommerer*, 10 B.R. at 942. Many farmers in his area must work on the side to supplement their farm income. The record amply supports finding that debtors consider farming their primary occupation that they intend to continue farming in the future.

## II.

■ PCA next contends that these items of equipment were not "used" in the debtors' trade. This argument has little merit. The items of equipment on which the La-Fonds seek to avoid PCA's lien were found by the Bankruptcy Court to be tools or implements commonly understood as used by farmers in the trade of beef cattle, dairy and crop farming. It matters little that debtors do not currently use this equipment or that they are storing these items on another's property. The evidence shows that they have used this equipment extensively in the past and that they intend to use it in their future farming operations.

## III.

■ Finally, PCA argues that large items of farm equipment were never meant to be considered "implements" or "tools of the trade" within the meaning of 11 U.S.C. § 522(f)(2)(B). In enacting the Bankruptcy Code, Congress provided for the exemption of certain property which would otherwise be distributed to creditors. In this case, debtors seek to avoid a lien on certain property under § 522(f)(2)(B), which provides in pertinent part:

(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in the property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

.    .    .    .    .

(2) a possessory, nonpurchase-money security interest in any—
(B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor ...

Some courts have held that § 522(f)(2)(B) applies only to hand tools and small implements with nominal commercial resale value: *In Re Sweeney*, 7 B.R. 814 (E.D.Wisc. 1980); *In Re O'Neal*, 20 B.R. 13 (Bankr.E. D.Mo.1982); *In Re Yparrea*, 16 B.R. 33, 35 (Bankr.D.N.M.1981). Other courts have al-

lowed tractors and large farm implements to be subject to the avoiding power of § 522(f)(2)(B): *Augustine v. United States,* 675 F.2d 582 (3d Cir.1982); *In Re Zweibahmer,* 25 B.R. 453 (N.D.Ia.1982); *In Re Liming,* 22 B.R. 740 (W.D.Okla.1982); *In Re Seacord,* 7 B.R. 121 (W.D.Mo.1980). In *Middleton v. Farmers State Bank of Fosston,* 41 B.R. 953 (D.Minn.1984), this court followed the latter line of cases and adopted a broad interpretation of the Bankruptcy Act. *Middleton* holds that large farm equipment may be subject to the lien avoidance provision in order to "fulfill one of the expressed intentions of the framers of the [Bankruptcy] Act of giving debtors a 'fresh start.'" *Id.* at 955.

Appellant urges this court to reconsider its holding in *Middleton* in light of the recent Eighth Circuit decision in *In Re Thompson,* 750 F.2d 628 (8th Cir.1984). *Thompson* involved a farmer who sought to avoid a lien on 210 baby pigs under 11 U.S.C. § 522(f)(2)(A), which provides for an exemption in "household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor...." Determining that 210 baby pigs did not fit within the definition of household goods or animals, the Eighth Circuit held:

> In conclusion, we hold that only those personal goods necessary to the debtor's new beginning and of little resale value fit the federal bankruptcy philsophy embodied in section 522(f)(2).

*Id.* at 631. Appellant urges that in so holding, the Eighth Circuit has mandated a narrow reading of § 522(f)(2).

While PCA stresses that the lien avoidance provision must now be read narrowly, it somewhat inconsistently urges a broad reading of *Thompson* in order to make its holding applicable to this case. In *Thompson,* the debtor-farmer sought to avoid a lien on his pigs, claiming they were for his personal, family, or household use and therefore within the meaning of § 522(f)(2)(A). The debtor's position that

the pigs were for personal or family use was rejected and the lien was allowed to stand. In *Middleton* and in the instant case, however, debtors seek to avoid a lien on large farm implements or tools under § 522(f)(2)(B). *Thompson* thus does not directly address the issue presented here and is distinguishable. If this court is to adopt a narrow interpretation of the tools of the trade subsection, it will not be by analogy to a subsection concerned with personal or household goods.

Appellant PCA argues that this court's interpretation of § 522 is inconsistent with the purposes of the Bankruptcy Act. The Act was not intended to be pro-debtor. It was designed to provide individual debtors with the bare minimum needed for a fresh start while at the same time providing all creditors equitable treatment. *See* Note, *Avoiding Liens Under the New Bankruptcy Code: Construction and Application of Section 522(f),* 15 U.Mich.J.L.Ref. 577, 582 (1982). Legislative history indicates that the lien avoidance provisions were designed to "provide debtors with a mechanism by which they could extricate themselves from 'adhesion contracts' impairing a 'fresh start.' Legislators were concerned with creditors who, in loaning money, took security interests in all of a debtors' personal belongings, and then threatened repossession as a means of coercing repayment from frightened debtors." *Thompson,* 750 F.2d at 630 (citations omitted).

Debtors urge that the correct view of the tools of the trade section is that Congress, in setting the tools of the trade lien avoidance language in a separate subsection than that provided for household, personal, and family goods, intended that tools and implements could be of more than nominal resale value. This court agrees. Congress could not have been totally unaware of the fact that many "tools" or "implements" of the trade are more expensive than ordinary household goods. The literal meaning of the tools of the trade subsection indicates an intention to allow avoidance of liens on large farm implements and tools, items necessary to a debtor-farmer's new begin-

ning. As was insightfully stated in *In Re Pommerer*:

> One primary purpose of the Bankruptcy Code is to afford the financially beleagured a fresh start by readjusting financial rights and liabilities ... (Citations omitted). A fresh start cannot be attained by returning a debtor to point zero. Sec. 522(f) encompasses property which Congress envisioned as necessary to give substance to the concept of a fresh start. This property is required for the maintenance, health and welfare of the debtor and his family, and avoids literal destitution. Eliminate them and the debtor would be left financially fresh, but without a start. (Citations omitted).

10 B.R. at 946. Allowing avoidance of liens on large farm implements does not impair the Act's attempt to balance the interests of debtors with those of creditors. To the contrary, this interpretation of § 522(f)(2)(B) fulfills not only the literal interpretation of the Act, but it also enables the debtor to start afresh, without treating creditors unfairly.

Appellant disagrees and stresses that there are sound policy reasons for not allowing lien avoidance on large farm equipment. PCA opines that the "effect of ... applying 11 U.S.C. 522(f) to avoid liens on farm equipment is to take away from present operating farmers the ability to use paid-for equipment as collateral for operating loans," thus contributing to what PCA terms the "credit crunch." Admittedly, lenders may be hesitant to lend knowing debtors may someday be able to avoid a portion of their liens. But most farmers generally have other sources of collateral, including crops and livestock. Moreover, the potential maximum value of nonhousehold avoidance under 11 U.S.C. § 522(f)(2) is $17,300 per family. *See Middleton*, 41 B.R. at 954. There is thus some limit on a debtor's ability to avoid liens on large farm implements or tools. Clearly, the credit crunch facing farmers today is serious and cannot be ignored. While the lien avoidance remedy may arguably contribute to the problem, to assert it is a major source

is to simplfy a complex, multi-faceted situation. The solution lies not with the courts to act on a case-by-case basis, but with Congress to deal with the farm crisis legislatively.

For the foregoing reasons, the decision of the Bankruptcy Court is affirmed in all respects.

IT IS SO ORDERED.