**In re Norman HAHN and Lorna Hahn, Debtors.**

**Bankruptcy No. 5–85–235.**

United States Bankruptcy Court,
D. Minnesota,
Fifth Division.

Aug. 29, 1985.

Timothy D. Moratzka, Hastings, Minn., for debtors.

Jeffrey J. Haberkorn, Aitkin, Minn., for Mark K. and Marguerite Kim.

Mark E. DuVal, Minneapolis, Minn., First Nat. Bank of Aitkin.

## AMENDED ORDER GRANTING MOTIONS FOR LIEN AVOIDANCE

GREGORY F. KISHEL, Bankruptcy Judge.

This Chapter 7 case came on before the undersigned United States Bankruptcy Judge on April 4, 1986, upon Debtors' motions for avoidance of judicial liens pursuant to 11 U.S.C. § 522(f). Debtors ap-

peared by their attorney, Timothy D. Moratzka. The First National Bank of Aitkin (hereinafter "First National") appeared by its attorney, Mark E. DuVal. Mark K. and Marguerite W. Kim (hereinafter "the Kims") appeared by their attorney, Jeffrey J. Haberkorn. Upon the moving documents, counsel's argument and memoranda of law, and all of the other files, records, and proceedings in this case, the Court determines that Debtors' motions must be granted.

## FINDINGS OF FACT

1. That Debtors filed a Voluntary Petition under Chapter 7 of the Bankruptcy Code in this Court on August 29, 1985.

2. That, on their Schedule B–4, Debtors claimed an exemption under MINN.STAT. § 510.01 *et seq.* for their interest in their homestead located in Aitkin County, Minnesota, legally described as follows:

North Half (N½) of Lot Twenty-eight (28) and Lot Twenty-nine (29), SUNSET HILLS ADDITION,

alleging the value claimed exempt as $100,-000.00. Debtors' Schedule B–1 alleges the market value of the homestead as $100,-000.00. Debtors' Schedule A–2 lists a debt in favor of Manufacturers Hanover Mortgage Corp. in an outstanding balance of $40,000.00, secured by a mortgage against the homestead.

3. That Debtors' Meeting of Creditors was scheduled for and conducted on December 2, 1985.

4. That neither the Trustee, any creditor, or any other party in interest served or filed an objection to Debtors' claim of homestead exemption to the described real estate within thirty days after the Meeting of Creditors in this case.

5. That on April 22, 1985, First National obtained a judgment against Debtors in Minnesota State District Court for the Ninth Judicial District, Aitkin County, in Court File No. C–85–92. This judgment was subsequently amended and docketed on May 13, 1985. Debtors have not alleged the amount of this judgment in their mov-

ing documents, though their Schedule A–2 lists total secured debt in favor of First National of $708,000.00. This judgment was apparently taken in foreclosure of First National's mortgage against Debtors' non-homestead real estate, though the record is not clear on this point.

6. That, on August 13, 1985, the Kims obtained a judgment against Debtors in Minnesota State District Court for the Ninth Judicial District, Aitkin County, in Court File No. C–85–35. Debtors have not alleged the amount of this judgment in their moving documents, though their Schedule A–3 lists an unsecured debt in favor of Mark Kim in the amount of $14,-314.00.

7. That First National's and the Kims' attorneys attended the Meeting of Creditors and interrogated Debtors regarding the propriety of their claim of homestead exemption, apparently on the basis that Debtors allegedly did not occupy it as a dwelling.

8. That, after the Meeting of Creditors, First National's attorney requested Debtors' counsel to amend Debtors' B–1 Schedule to correct purportedly-erroneous legal descriptions and allegations as to the fee ownership of non-homestead real estate. Debtors' counsel refused to amend the Schedules as requested and advised First National's counsel that First National's goal could be accomplished by the filing of a Report of Abandonment by Debtors' Chapter 7 Trustee.

9. That, after discussion with First National's counsel, Debtors' Chapter 7 Trustee filed a Report of Abandonment of Debtors' homestead and most of their non-homestead real estate on January 27, 1986. In this document, the Trustee reported that he had found the real estate listed to have been of inconsequential value to the estate due to the pendency of judicial foreclosure proceedings by First National and the existence of prior encumbrances which reduced the estate's equity or potential equity in it to nothing. The office of the United States Trustee certified its agreement

with the abandonment by endorsing the report.

10. That Debtors have never amended any of their bankruptcy Schedules or Statements as initially filed.

11. That, without first obtaining an Order from this Court granting it relief from stay, First National has scheduled a Sheriff's execution sale for April 21, 1986, under which it purports to sell Debtors' interest in their homestead and non-homestead Aitkin County real estate in execution upon its judgment. First National's attorney served a revised notice of this execution sale upon counsel for Debtors on March 11, 1986, service of an original notice having been made on Debtors on March 3, 1986. Debtors do not actively oppose conduct of the sheriff's sale of their non-homestead real estate but do oppose it as to their homestead.

12. That, due to the pendency of an adversary proceeding commenced by the Kims under 11 U.S.C. §§ 523 and 727, this Court has not granted Debtors a discharge in bankruptcy to date.

## CONCLUSIONS OF LAW

1. That the docketing of First National's and the Kims' judgments in Aitkin County created liens in favor of those creditors against Debtors' Aitkin County homestead. MINN.STAT. § 548.09 subd. 1.

2. That the liens so obtained by First National and the Kims are "judicial liens" within the meaning of 11 U.S.C. §§ 101(30) and 522(f)(1).

3. That Debtors are entitled to claim an exemption for the equity in their homestead in the amount of $60,000.00, the difference between the scheduled value and the amount of the outstanding consensual mortgage against it. 11 U.S.C. § 522(b)(2)(A); MINN.STAT. § 510.01 *et seq.*

4. That the existence of First National's and the Kims' judicial liens against Debtors' homestead impairs exemptions to which Debtors would otherwise be entitled under 11 U.S.C. § 522(b).

5. That, therefore, Debtors are entitled to an Order avoiding the fixing of First National's and the Kims' judicial liens against their homestead.

## DISCUSSION

First National's counsel has briefed and argued three separate grounds for objection to Debtors' lien avoidance motion. The Kims' counsel joins in the objections and concurs in the underlying argument. The Court will address the arguments individually.

### A. Applicability of § 522(f) lien avoidance after allowance of Debtors' claim of homestead exemption.

First National's counsel's first argument can be summarized as follows: Under 11 U.S.C. § 522(f) a debtor's avoidance power applies only to liens against property which may be exempted under § 522(b). § 522(b) only allows a debtor to exempt property of the estate. The Trustee's post-petition abandonment of Debtors' homestead passed that property out of the bankruptcy estate back to Debtors. Thus, Debtors may longer "exempt" the property and may not avoid judicial liens against it.

The Court must reject this argument because, at base, it ignores the sequential effect of events in Debtors' case. True, as of the date of hearing on Debtors' motion their homestead had passed out of their bankruptcy estate. However, it passed out of the estate *by the allowance of Debtors' claim of exemption to it,* and not via the Trustee's abandonment. Debtors' claim of homestead exemption was allowed on January 2, 1986, by the running of the 30 day objection period after the Meeting of Creditors. BANKR.R. 4003(b). The Trustee's abandonment of the homestead was no more than surplus effort on his part; by the time he filed the abandonment on January 27, 1986, the homestead was no longer property of the estate subject to his abandonment. To the extent that First National's first argument is predicated on Debtors' alleged loss of the

right to exempt their homestead because of the Trustee's abandonment, it is based on fiction. If anything, the sequence of events had the converse effect on Debtors' and the Trustee's rights to omit the homestead from the estate; by the allowance of their exemption claim, Debtors preempted the motive right from the Trustee. All collateral and resultant effects must be determined accordingly.

However, even if the Trustee had filed his Report of Abandonment before the allowance of Debtors' exemption claim, the Court still could not adopt First National's first argument. This argument grossly mischaracterizes the structure of § 522 and is based on a misperception of fundamental precepts of the Code. Adoption of it would confound Congressional intent and distort the conceptual framework under which debtors' and creditors' rights are adjudicated in bankruptcy.

██ The legislative history makes Congress' intent in enacting § 522(f) crystal-clear:

> The debtor may void any judicial lien on *exempt property* ... [this] right allows the debtor to undo the actions of creditors that bring legal action against the debtor shortly before bankruptcy. Bankruptcy exists to provide relief for an overburdened debtor. If a creditor beats the debtor into court, the debtor is nevertheless entitled to his exemptions.

H.R.REP. No. 595, 95th Cong., 1st Sess. 126–27 (1977), U.S.Code Cong. & Admin. News 1978, pp. 5787, 6087–6088 (emphasis added). The Congressional reports later provide:

> Subsection (f) protects the debtor's exemptions, his discharge, and thus his fresh start by permitting him to avoid certain liens on exempt property. The debtor may avoid a judicial lien on any property *to the extent that the property could have been exempted in the absence of the lien* ...

H.R.REP. No. 595, 95th Cong., 1st Sess. 362 (1977); S.REP. No. 989, 95th Cong., 2d Sess. 76 (1978), U.S.Code Cong. & Admin. News 1978, pp. 5862, 6318 (emphasis added).

The argument at hand confuses the two different potential functions of exemptions in an individual's Chapter 7 case. Exemptions serve to further a debtor's right to a "fresh start" in two ways. In the first instance, exemptions allow a debtor to protect a minimum amount of property—generally that which is considered necessary for basic living needs—from the claims of unsecured creditors in a liquidation bankruptcy case. H.R.REP. No. 595, 95th Cong., 1st Sess. 126 (1977). However, in the 1978 Code Congress created a new debtor's remedy which utilized exemption rights as a "yardstick." H.R.REP. No. 595, 95th Cong., 1st Sess. 126 (1977). Under § 522(f), the debtor's exemption rights define the outer boundaries of his right to avoid certain types of prepetition liens against his property, an additional remedy to effectuate the post-bankruptcy "fresh start." To be sure, the filing of a bankruptcy Petition creates an estate which contains "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1); H.R. REP. No. 595, 95th Cong., 1st Sess. 367–370 (1977). The debtor has the right to exempt property from the estate under applicable state or federal law pursuant to 11 U.S.C. § 522(b). Once a debtor's claim of exemption to property has been allowed by the running of the period for objection to the claim of exemptions under BANKR.R. 4003(b), the property revests in the debtor and is no longer property of the estate. *In Re Wiesner*, 39 B.R. 963, 965 (Bankr.W.D. Wisc.1984); *In Re Kretzer*, 48 B.R. 585, 587 (Bankr.D.Nev.1985). However, the substantive (if wholly intangible) transfer of exempt property from the estate to the debtor occurring when exemptions are allowed does not affect a debtor's right to use remaining exemption rights not so exhausted to defeat the rights of judicial lien creditors under § 522(f). First National's dissembling about the nature of the lien avoidance remedy does not impress the Court. The legislative history makes it clear that Debtors' lien avoidance rights

would not have been extinguished when the Trustee abandoned their homestead, even had he done so before the exemption was allowed.[1] The logical extension of First National's argument would not only vitiate § 522(f); in all probability it would render many of the exemption provisions of the Code nugatory for any purpose.

### B. Timeliness of Objection to Debtors' Claim of Homestead Exemption When Debtors Fail to Correct Errors in Property Schedules Upon Creditors' Request.

First National's counsel's second argument seems to run as follows: BANKR.R. 4003 allows a party in interest to object to a debtor's claim of homestead exemption within thirty days after the conclusion of the Meeting of Creditors or the filing of "any amendment to the [property] list..." Because Debtors' counsel refused to amend their property schedules, the Trustee's Report of Abandonment must be deemed an amendment of a property list and its filing commenced the thirty-day period for objection to the claim of exemption.

■ This argument is also disingenuous. The Court refuses to distort Congressional intent by equating a Trustee's Report of Abandonment with an amendment to the "list of property claimed as exempt" required by BANKR.R. 4003(a). As previously noted, allowance of a debtor's claim of exemption and a trustee's abandonment have one substantive effect in common— they both remove property from the bankruptcy estate. Other than that, they share no common purpose and have few, if any, common consequences. Even were the Court to equate the two, however, the argument fails on two other grounds. First, even if the January 27, 1986 filing of the Report of Abandonment triggered a new objection period, First National nonetheless did not assert its right to object after that. It did not serve and file a written objection,

which would have been heard as a motion pursuant to LOC.R.BANKR.P. (D.Minn.) 113(b). Second, even if it had done so it could not have properly based a timely objection on the Trustee's Report. The Trustee's Report of Abandonment in no way challenged or modified any material allegation as to Debtors' homestead made by them in their original Schedule B–4. The filing of an amended property schedule triggers a new period for objection only as to exemption claims which are actually amended; the extension of the objection period occurs only for "those amendments which are actually made, and not to reopen previously determined issues." *In Re Gullickson*, 39 B.R. 922, 923 (Bankr.W.D.Wis. 1984). Thus, even were the Court to construe the Trustee's Report as an amendment of Debtors' Schedules, it cannot hold that that amendment renewed the objection period under BANKR.R. 4003.

### C. Preservation of First National's Objection to Debtors' Claim of Exemption by "Actual Notice" at Meeting of Creditors.

First National's third argument is, basically, that the Bank may argue its objection to Debtors' claim of homestead exemption in the context of this motion, notwithstanding its failure to previously file an objection to Debtors' claim of homestead exemption. First National's contention apparently is that its objection was somehow preserved by its counsel's "actual notice" of the Bank's intention to object given to the Trustee and Debtors at the Meeting of Creditors. This argument is unavailing, at least insofar as it would justify a preservation of First National's right to object to the exemption of Debtors' homestead from the bankruptcy estate. As the Sixth Circuit has noted, "[t]he clear import of [BANKR.R. 4003] and of section 522(1) is that objections to claimed exemptions must be made within thirty days after the creditor's Meeting or any amendment, or they

---

1. The Local Bankruptcy Rules for this District explicitly recognize this: "[A] motion by the debtor to ... avoid a lien on exempt property under § 522(f) of the Code and Rule 4003(d)

may be filed at any time. A case may be reopened for such purposes without payment of additional filing fee under Rule 5010." LOC.R. BANKR.P. (D.Minn.) 113(f).

are waived." *In Re Dembs,* 757 F.2d 777, 780 (6th Cir.1985). LOC.R.BANKR.P. (D.Minn.) 113(b) clearly places the procedural burden of coming forward on the objecting creditor where the legal or factual validity of an exemption is uncertain. *See also In Re Dembs* at 780. First National failed to shoulder this burden.

To be entirely fair to First National, however, the Court must consider an extension of this argument which is raised—perhaps imprecisely—in counsel's brief. The point that counsel seems to be driving at may be more appropriate phrased as follows: First National should not be estopped from litigating the propriety of Debtors' claim of exemption in this lien avoidance motion, as that exemption is a necessary element of Debtors' entitlement to the relief sought, and Debtors cannot be said to have been prejudiced in view of the prior "actual notice" of First National's objection. This argument has some attractiveness on its face. The Judges of this Court have heard and decided the issue of whether a debtor is engaged in a particular trade in the context of motions for avoidance of liens against tools of the trade under § 522(f)(2). *See, e.g., In Re Middleton,* 37 B.R. 36 (Bankr.D.Minn.1984), *rev'd sub nom. Middleton v. Farmers State Bank of Fosston,* 41 B.R. 953 (D.Minn.1984), *on remand,* 45 B.R. 744 (Bankr.D.Minn.1985); *In Re LaFond,* 45 B.R. 195 (Bankr.D.Minn.1984), *aff'd sub nom. LaFond v. Production Credit Association of St. Cloud,* 61 B.R. 303 (D.Minn.1985) (appeal to Eighth Circuit pending).[2] The question of whether a debtor is engaged in a particular trade which uses the tools in question is an element of *both* the entitlement to the exemption and the entitlement to lien avoidance. *Middleton,* 41 B.R. 953, 955.

Neither the Code nor the Rules—nor the legislative history—explicitly address the question at hand. However, the structure

of § 522(f) dictates a contrary conclusion in the instant case. The wording of the statute does appear to bar the application of the estoppel argument in lien avoidance proceedings under § 522(f)(2), but to allow it in proceedings under § 522(f)(1). In delineating the lien subject to avoidance, § 522(f)(1) makes only a perfunctory reference to the phrase "judicial lien," which is defined at 11 U.S.C. § 101(30). On the other hand, Congress took pains in drafting § 522(f)(2) to narrow the class of nonpossessory, nonpurchase-money personal property liens subject to avoidance, by a lengthy and rather explicit description. As this Court has noted, not all property which may be claimed as exempt under § 522(b) may be freed from encumbering liens under § 522(f)(2). *In Re Psick,* 61 B.R. 308, 313 (Bankr.D.Minn.1985). The extended and specific enumeration of consensual personal property liens subject to avoidance under § 522(f)(2) and the specific use qualifications set forth therein evidence a Congressional intent to make these classifications and uses separate and essential elements of lien avoidance under that provision. Thus, though many of the same questions of classification or use are material in the exemption context at an earlier stage in a bankruptcy case, under § 522(f)(2) the same issues may be litigated in the lien avoidance context. By contrast, however, § 522(f)(1) merely requires proof of an entitlement to an exemption (which is shown merely by a claim of exemption duly allowed in the case) and the existence of a judicial lien.

■ The rationale for this disparate treatment is further supported by the distinct nature of the liens subject to avoidance under §§ 522(f)(1) and (2). The personal property security interests subject to § 522(f)(2) are *consensual* liens. Congress made them subject to attack at least in part because it found that such liens had been abused by certain classes of creditors, with the effect of hampering a debtor's post-

**2.** It should be noted, however, that the estoppel argument was not raised in either of these cases.

bankruptcy fresh start. H.R.REP. No. 595, 95th Cong., 1st Sess. 126–7 (1977); *U.S. v. Security Indust. Bank,* 459 U.S. 70, 84, 103 S.Ct. 407, 415, 74 L.Ed.2d 235 (1982) (Blackmun, J., concurring); *In Re Thompson,* 750 F.2d 628, 630 (8th Cir.1984); *In Re LaFond,* 45 B.R. at 199. Because the § 522(f)(2) remedy was created to address a very specific evil (that is, the abuse of valueless security interests to coerce reaffirmation and defeat the discharge of debt in bankruptcy), it enacted a test with specific elements. Also, it is quite arguable that because § 522(f)(2) liens were initially consensual Congress wished to limit the availability of the remedy by requiring proof of specific elements. The same considerations do not apply to judicial liens, which are by their nature non-consensual. *See* 11 U.S.C. § 101(30). The legislative history clearly shows that Congress sought to ameliorate the negative effects on debtors' exemption rights of a creditor's victory in "the race to the Courthouse." A judicial lien converts an unsecured judgment creditor into a secured creditor, without consent by the debtor or, in the usual case, any action more involved than the simple docketing of a judgment in the county where lienable property is located. *See, e.g.,* MINN.STAT. § 548.09. The Congressional intent to undo the "race to the Courthouse," and the lack of a more involved statutory test, evidence Congress' intent to prohibit the relitigation of settled exemption disputes in the context of a § 522(f)(1) lien avoidance motion. Simply stated, if a judgment lien creditor does not properly litigate a debtor's entitlement to the underlying exemption within the timeframe es-

tablished under BANKR.R. 4003(b) and LOC.R.BANKR.P. (D.Minn.) 113(b), he is estopped from litigating that issue in the debtor's ensuing motion under § 522(f)(1).

■■■ Thus, First National's third argument must also be rejected because of its failure to timely object to Debtors' claim of homestead exemption.[3]

### D. Applicability of Automatic Stay to First National's Judgment Execution Sale.

Without first seeking an Order of this Court granting it relief from stay, First National noticed and scheduled a judgment execution sale on Debtors' homestead and non-homestead Aitkin County real estate for April 21, 1986. At the hearing on this motion, counsel for Debtors advised the Court that they had no objection to the sale proceeding, at least as against Debtors' non-homestead property.

■■■ Regardless of Debtors' present acquiescence, the Court cannot countenance this obvious violation of the automatic stay. The stay against First National's enforcement of its rights as mortgagee or judgment lien creditor *as against property of the estate* did terminate upon the Trustee's abandonment. However, the stay has continued and will continue to restrain First American's enforcement of its rights *as against property of the Debtors* until this case is closed or dismissed or until Debtors are granted or denied a discharge. *Compare* 11 U.S.C. § 362(c)(1) with 11 U.S.C. § 362(c)(2). *See also In Re*

---

**3.** Even were the Court to have held in First National's favor on the estoppel argument, it would not deny Debtors' motion. To be sure, Debtors have the burden to establish all elements of their entitlement to lien avoidance and bear the burden of persuasion thereon. *In Re Weinbrenner,* 53 B.R. 571 (Bankr.W.D.Wis. 1985). However, the recitation in their verified motion that they had claimed and been allowed their homestead exemption satisfies that element. Had First National properly challenged the claim of exemption in the first instance, the burden of proving the impropriety of Debtors'

claim of exemption would have been on it. BANKR.R. 4003(c); *In Re Rosen,* 52 B.R. 96 (Bankr.D.Minn.1985). Once Debtors made a *prima facie* showing of their entitlement to the exemption for this motion, the burden shifted to First National and a standard identical to that under BANKR.R. 4003(c) should be applied. First National failed to come forward with any evidence to establish the impropriety of Debtors' claim of exemption and actively consented to the Court hearing and determining the matter on attorney arguments alone. It has not met its burden.

*Kretzer* at 588. As noted earlier, the allowance of Debtors' exemption revested their homestead in them; also, the Trustee's abandonment of Debtors' non-homestead real estate revested it in them. Neither of these acts constituted an "abandonment of the property to First National." A secured creditor enforcing its rights after allowance of a debtor's exemption and/or a trustee's abandonment, but prior to a grant of relief from stay or the termination of the stay under § 362(c)(2), violates the stay. *In Re Gassaway,* 28 B.R. 842 (Bankr.N.D.Miss.1983); *In Re Estes,* 15 B.R. 25 (Bankr.S.D.Ohio 1981); *In Re Doyle,* 11 B.R. 110 (Bankr.E.D.Pa.1981); *In Re Motley,* 10 B.R. 141 (Bankr.M.D.Ga. 1981); *In Re Knight,* 8 B.R. 925 (Bankr.D. Md.1981); *In Re Cruseturner,* 8 B.R. 581 (Bankr.D.Utah 1981). First National has done so by merely noticing and scheduling its judgment execution sale; the Court cannot place its imprimatur on the violation by allowing the sale to proceed. The denial of relief from stay contained in the original version of this Order entered on April 21, 1986, will be continued until First National properly requests such relief.

WHEREFORE, IT IS ORDERED:

1. That the liens attaching to Debtors' homestead real estate, located in Aitkin County, Minnesota, legally described as follows:

> North half (N½) of Lot Twenty-eight (28) and Lot Twenty-nine (29), SUNSET HILLS ADDITION,

as a result of the docketing of First National's and the Kims' judgments in Minnesota State District Court for the Ninth Judicial District, Aitkin County, are hereby rendered null and void;

2. That First National shall not be allowed relief from the automatic stay imposed by 11 U.S.C. § 362 to enforce its judgment liens against Debtors' non-homestead real estate until it has obtained an Order from this Court granting it relief from stay, or until the automatic stay otherwise terminates under 11 U.S.C. § 362(c).