**In re Myron B. PETERS and Cynthia R. Peters, Debtors.**

**Bankruptcy No. 3–85–1706.**

United States Bankruptcy Court,
D. Minnesota,
Third Division.

May 12, 1986.

Kevin P. Shea, St. James, Minn., for debtors.

Paul J. Stier, Windom, Minn., for Windom State Bank.

ORDER

DENNIS D. O'BRIEN, Bankruptcy Judge.

This matter came before the Court on several motions of the parties including the Windom State Bank's objection to Debtors' claimed exemptions and to Debtors' motion to avoid certain of the Bank's liens. On February 18, 1986, the parties submitted a stipulation of facts. On February 24, 1986, both parties submitted briefs and agreed that the Court should decide this matter without further evidentiary hearing. Based on the file and records herein, the Court makes this Order pursuant to the Federal and Local Rules of Bankruptcy Procedure.

## I.

### FACTS

The Debtors filed their petition under Chapter 7 of the Bankruptcy Code on July 30, 1985. Prior to seeking relief under the Bankruptcy Code, the Debtors ran a family farming operation which they supplemented with outside jobs. Myron Peters has been actively involved in the farming operation. He arranged most of the financing for the farm; he planted, harvested and marketed all the crops; and although he is engaged in other employment at the moment, he intends to resume farming full-time. Cynthia Peters is presently employed full-time as a deputy clerk in Cottonwood County Court. In this position, as well as in her previous position as a court reporter, Cynthia Peters took an active part in the farming operation.

In 1973, the Debtors began financing their operation through the Windom State Bank (Bank). Since that date, the Debtors have continued to seek and receive financing from the Bank for both the purchase of equipment and for general operating expenses. The property involved in the dispute between the parties is:

1972 JD 4320 diesel tractor and hub duals

1962 JD 4010 diesel tractor and hauls

1974 JD No. 230 tandem disk

1975 JD 710 5–18 auto re-set plow

1978 Kovar drag

1975 JD No. 58 loader

1977 Conrad 9,000 bu. bin

2 flat racks and gears

550-gal. fuel barrel and electric pump

Misc. tools

Sudengary 61 ft., 8 in. auger

During the period of their financial relationship with the Bank, the Debtors have given the Bank several notes, many representing purchase-money loans for certain pieces of equipment. Following are descriptions of various transactions relevant to the property at issue in this lien avoidance proceeding.

On December 31, 1976, the Debtors purchased a John Deere 4320 tractor from Windom Implement Company. In order to make the down payment on this purchase, the Debtors borrowed $5,000.00 from the Bank on January 3, 1977. The Debtor, Myron Peters, gave the Bank Promissory Note No. 100490. On February 25, 1977, the Debtor borrowed an additional $12,000.00 to pay off the remainder of the purchase price giving the Bank Promissory Note No. 100987. At that time, Mr. Peters gave the Bank a security interest specifically in the John Deere 4320 tractor, but also in all farm equipment.

On October 5, 1977, the Debtor, Myron Peters, co-signed a note with his mother, Rosie Peters, borrowing $6,000.00 from the Bank on Promissory Note No. 102787 in order to purchase a Conrad Grain Bin.

On March 27, 1978, Myron Peters borrowed $4,500.00 from the Bank on Promissory Note No. 104135 in order to buy a John Deere 230 disk.

On April 21, 1978, Myron Peters purchased a Kovar Drag, borrowing $2,000.00 on Note No. 104375.

On May 7, 1979, the Debtor, Mr. Peters, purchased a John Deere No. 58 loader obtaining the purchase-money through a loan from the Bank for $3,500.00 on Promissory Note No. 107606.

On October 17, 1979, Mr. Peters borrowed $5,000.00 from the Bank on Promissory Note No. 109036 to purchase an IHC plow and Sudengary Auger. On the same date, Mr. Peters granted another security interest to the Bank specifically describing the auger and plow, but also including all other farm equipment as collateral.

No equipment that the Debtors seek to avoid liens on, other than the specific items related above, has been shown to have had purchase-money security interests encumbering it at any time. Accordingly, the John Deere 4010 tractor, two hayracks, the fuel barrel and pump and miscellaneous tools were never subject to purchase-money security interests.

The Bank participated in numerous operating loans to the Debtors in addition to purchase-money loans. On March 30, 1981, the Bank extended an operating loan of $69,500.00 to the Debtors. At the time the Bank loaned this operating money to the Debtors, the Debtors executed another security agreement, giving the Bank a security interest in all farm equipment and some crops. The Debtors used the majority of this loan to pay off a previous operating loan.

On March 9, 1982, the Bank loaned the Debtors $80,250.00. The Debtors immediately made a payment of $66,500.00 on the previous operating loan. The Bank continued to grant the Debtors operating loans annually. The Debtors, in turn, would use the money to pay off previous operating loans, in large part, and the remainder for current operating expenses. From time to time, the Bank required the Debtors to execute additional security agreements, such as on June 17, 1983, when Myron Peters again gave the Bank a security interest in all equipment and crops on certain real estate, but also including warehouse receipts, rights to payment and specifically PIK payments. The latest security interest granted to the Bank was on February 24, 1984, which again included equipment, but changed the real estate on which secured crops were to be grown.

In contrast to the operating loans which were annually renewed, Debtors made regular payments throughout the year on each of the purchase-money loans. These purchase-money loans were all paid in full by January of 1983 (*See* Creditors Exhibit No. 17).

The Bank perfected its security interests by periodically filing financing statements. The first such statement was filed on June 7, 1974. When this financing statement was about to lapse, the Bank filed a new one on May 9, 1979. On June 20, 1983, the Bank filed a financing statement pursuant to a security agreement executed on June 17, 1983, covering, among other items, all the property on which the Debtors are seeking to avoid its liens. This financing statement was amended on February 24, 1984, to include certain other crops as collateral.

The parties have stipulated as to the values of property involved in this proceeding as follows:

| | |
|---|---|
| 1972 JD 4320 diesel tractor and hub duals | $ 5,720.00 |
| 1962 JD 4010 diesel tractor and hauls | 3,080.00 |
| 1974 JD No. 230 tandem disk | 1,760.00 |
| 1975 JD 710 5–18 auto re-set plow | 1,320.00 |
| 1978 Kovar drag | 880.00 |
| 1975 JD No. 58 loader | 660.00 |
| 1977 Conrad 9,000 bu. bin | 5,500.00 |
| 2 flat racks and gears | 330.00 |
| 550-gal. fuel barrel and electric pump | 468.00 |
| Misc. tools | 660.00 |
| Sudengary 61 ft., 8 in. auger | 1,265.00 |
| | $21,643.00 |

The Debtors have claimed the property listed above as exempt, utilizing M.S.A. § 550.37, Subd. 5, and now seek to avoid the Bank's liens on it pursuant to 11 U.S.C. § 522(f). At the time the liens were created, § 550.37, Subd. 5, allowed an individual farmer-debtor an exemption of up to $5,000.00 value in farm machines and implements. The Section has since been amended, effective July 1, 1985, increasing the individual exemption to $10,000.00.

The Bank has timely objected to the exemptions claimed and resists the motion to avoid the liens. It argues that the Debtors are not "farmers" and that the equipment

involved is not commonly understood as "farm machines or implements". The Bank further claims that its liens arose prior to the enactment of 11 U.S.C. § 522(f); that in any event, it has purchase-money security interests in the majority of this equipment; and that accordingly, the Debtors cannot avoid its liens. Finally, the Bank argues that at most, if all else fails, the Debtors can only avoid its nonpurchase-money liens up to the amount of the exemption allowed by M.S.A. § 550.37, Subd. 5, at the time that the liens were created.

The Debtors respond that they are both farmers; that the equipment claimed exempt is "farm machines or implements" and properly exemptible; that the series of payments and refinancings with the Bank destroyed the purchase-money character of any of the loans as well as pre-Code security interests of the Bank; and that they are entitled to avoid the liens on up to $20,-000.00 in value of equipment based on the amended Minnesota Statute doubling the exemption for "farm machines and implements".

## II.

### ANALYSIS

The Debtors bring their motion for lien avoidance pursuant to 11 U.S.C. § 522(f) which provides in pertinent part:

> (f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
>
> > (2) a nonpossessory, nonpurchase-money security interest in any—
> >
> > (B) implements, professional books, or tools of the trade of the debtor or tools or the trade of a dependent of the debtor;

In order for the Bank's liens to be avoided under this section, the Court must find: (1) that the Debtors have an interest in the property in question; (2) that the Bank's liens impair an exemption which the Debtors are otherwise entitled to; (3) that the liens are nonpossessory, nonpurchase-money security interests in the property; and (4) that the property encumbered by the Bank's liens falls within 11 U.S.C. § 522(f)(2)(B) quoted above.

■ The Debtors clearly have an interest in the property involved and the first element is satisfied. Regarding the second element, the Bank argues that the Debtors are not farmers, and therefore, they are not entitled to exempt farming equipment under M.S.A. § 550.37, Subd. 5.[1] The Stipulation of Facts entered into by the parties, however, clearly shows that Myron Peters was a farmer in the past and has a present intention to continue farming in the future. Accordingly, the Court finds that Myron Peters is a farmer for purposes of exemption and lien avoidance.

■ The parties' Stipulation also indicates that Cynthia Peters played a significant role in the operation of the family farm, although she also had a full-time job outside the farm. Mrs. Peters helped her husband disc, drag, haul grain, operate equipment, walk beans, pick rocks and do other chores. She also took care of the book work for the farming operation, as well as a number of domestic chores necessary to the operation of the family farm. It is clear that if the Peters family farm is to continue in operation, Mrs. Peters will play a significant role in that operation. She is a farmer for purposes of exemption and lien avoidance.

■ Regarding the second element, entitlement to exemption, the Bank also argues that the items claimed exempt under M.S.A. § 550.37, Subd. 5, are not farm machines or implements. However, except for the 1977 Conrad Grain Bin and miscellaneous "tools of the trade", each of the items the Debtors have claimed exempt in this case is clearly a farm implement or machine used in the farming operation.

---

1. The burden of proof on the issue of entitlement to the exemption rests with the objecting party. Accordingly, the Bank bears the burden on this issue.

With regard to the large grain bin, the Court finds that it is not a farm implement or a machine as those terms are commonly understood, and it cannot be properly claimed exempt by the Debtors under the Minnesota exemption for farm machines and implements. Likewise, "miscellaneous tools" are not farm machines or implements and cannot be claimed exempt under M.S.A. § 550.37, Subd. 5. Since the grain bin and the tools are not properly exempted under Minnesota law, the Debtors cannot now avoid the liens on that property under 11 U.S.C. § 522(f).

█ With regard to the third element, the Bank argues that it has maintained purchase-money security interests in certain items of equipment over the history of financing with the Debtors. The Bank's liability ledger, however, shows that the Debtors actually paid off each of the purchase-money loans through various payments over the years. Significantly, most of the Debtors' payments on these loans did not come from the yearly operating loans obtained from the Bank, but mostly from farm income. The Bank, upon receiving the final payments on each of the purchase-money loans, marked the notes "paid in full". The record before the Court clearly shows that the purchase-money loans have been paid in full, and the Bank's purchase-money security interests were extinguished.

Regarding the fourth element, the Court finds that all items determined above to have been properly claimed exempt as farm implements or machines come within the scope of 11 U.S.C. § 522.(f)(2)(B).

The question remains whether the Debtors are entitled to avoid nonpurchase-money, nonpossessory liens on the full $15,-483.00 stated value [2] of the property properly exempted from the estate. The Bank raises two constitutional defenses to the lien avoidance motion.

The Bank claims that its security interest predate the effective date of 11 U.S.C. § 522(f) [3] and that the section cannot be used to avoid the liens without resulting in an unconstitutional retroactive application of the statute. *See United States v. Sec. Indus. Bank,* 459 U.S. 70, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982). Secondly, the Bank argues that, even if its liens arose after the effective date of § 522(f), the Debtors cannot utilize the statute to avoid its liens to the increased amount of the exemption allowed by the 1985 amendment to M.S.A. § 550.37, Subd. 5. Such utilization, the Bank argues, would result in an unconstitutional retroactive application of the Minnesota Statute through § 522(f) to deprive the Bank of a vested interest in property.

The Bank first filed a financing statement perfecting its nonpurchase-money security interests on June 7, 1974. Subsequently, on May 9, 1979, the Bank filed another financing statement which was not a continuation of the earlier one. MINN. STAT. § 336.9–403(2) provides that "the effectiveness of a filed financing statement lapses on the expiration of the five-year period unless a continuation statement is filed prior to the lapse". The Statute goes on to note that upon the lapse of the financing statement, a security interest perfected thereunder becomes unperfected.

█ MINN. STAT. § 336.9–403(3) provides that a continuation statement, in order to be effective, must, among other things, "identify the original statement by file number and filing date, and state the original statement is still effective". As shown in Creditor's Exhibit No. 21, the Bank did not file continuation statements for either the 1974 or 1979 financing statements, and consequently, both financing statements had lapsed and the security interests perfected thereunder had become unperfected.

---

**2.** Since the grain bin, valued at $5,500.00, and the miscellaneous tools, valued at $660.00, are not properly exempted under M.S.A. § 550.37, Subd. 5, those items are not subject to lien avoidance and their values are deducted from the total stipulated value of $21,643.00.

**3.** The burden of proof on this issue rests with the Bank. The burden has not been met.

The Bank maintains a perfected security interest in all farm equipment, tools, etc., by security agreement created June 17, 1983, and perfected by financing statement filed on June 20, 1983. *See* Creditor's Exhibit Nos. 4 and 6. The effective date of 11 U.S.C. § 522(f) was October 1, 1979. In light of the history of the financial transactions between the parties, the Court finds that the existing security interest of the Bank in the Debtors' property effected by this proceeding, arose after the effective date of 11 U.S.C. § 522(f).[4] The first constitutional challenge cannot be sustained.

The Bank's existing lien was created prior to the amendment of M.S.A. § 550.37, Subd. 5, allowing an individual debtor engaged principally in farming an exemption increase from $5,000.00 to $10,000.00 in value of farm machines and implements. The Statute, as amended, became effective on July 1, 1985. As this Court stated in *In re Sticha*, 60 B.R. 717 (Bankr.Minn.1986):

> Although this bankruptcy case was filed after the effective date of the Minnesota Statute increasing the exemption and the Debtors are entitled exempt from the *estate* farm equipment totalling $20,000.00, 11 U.S.C. § 522(f) cannot be constitutionally applied to allow them to avoid the Bank's lien to that extent. Otherwise, application of § 522(f) would result in the use of a later-enacted statute to deprive the Bank of an earlier, lawfully created and sustained interest in property without compensation. *In re Schuette*, BKY 4-85-1683 [58 B.R. 417] (Bankr.Minn.1986) and *United States v. Sec. Indus. Bank*, 459 U.S. 70 [103 S.Ct. 407, 74 L.Ed.2d 235], 7 C.B.C.2d 629, (1982), *aff'g, Rodrock v. Sec. Indus. Bank*, 642 F.2d 1193, 4 C.B.C.2d 124 (10th Cir.1981).

Therefore, although the Debtors can exempt from the estate up to $20,000.00 in value of equipment, they can only avoid the Bank's liens to the extent of $10,000.00 value in the equipment.

The Court finds that all other issues raised by the parties are without merit.

ACCORDINGLY, IT IS ORDERED:

1. The Debtors' claimed exemptions at issue in this proceeding are allowed, except for the grain bin and miscellaneous tools which are disallowed as not being within the scope of M.S.A. § 550.37, Subd. 5.

2. The Debtors are entitled to avoid the liens of the Windom State Bank in a total amount of $10,000.00 value of exempted farm machines and implements allowed, and the liens shall be deemed avoided with respect to such property identified by the Debtors by listing and filing with the Court within ten days from the date of this Order.

---

4. The Bank filed a claim in the Debtors' estate for the amount of $123,883.31. Documents filed with, and in support of the claim, consist of notes, security agreements, financing statements and mortgages, all created and filed after October 1, 1979. Accordingly, it is clear that the Bank itself relies on security interests created and perfected after the effective date of 11 U.S.C. § 522(f) as the basis for its secured claim.