**In re Loren Daniel ZIMMEL, Shelly Marie Zimmel, Debtors.**

**Bankruptcy No. 6–95–0151.**

United States Bankruptcy Court,
D. Minnesota,
Sixth Division.

Sept. 1, 1995.

Michael Ruffenach, Bemidji, MN, for debtors.

Michael Fadlovich, Office of U.S. Trustee, Minneapolis, MN, for trustee.

### ORDER

DENNIS D. O'BRIEN, Chief Judge.

This matter came on for hearing on the Debtors' motion for lien avoidance on June 28, 1995, in Fergus Falls, Minnesota. Minnesota Department of Agriculture and First National Bank of Mahnomen, lien creditors, objected. Appearances were noted in

the record. The Court, having heard and received arguments of counsel; having reviewed the pleadings, affidavits and relevant files; and, being fully advised in the matter; now makes this **Order** pursuant to the Federal and Local Rules of Bankruptcy Procedure.

## I.

### STATEMENT OF CONTROVERSY.

The Debtors filed their petition for relief under 11 U.S.C. Chapter 7, on March 23, 1995. They now move to avoid liens on $26,000 of farm machinery and equipment pursuant to 11 U.S.C. § 522(f)(1)(B)(ii), having claimed exemption entitlement to the property under Minnesota state exemptions, Minn.Stat. 550.37, Subd. 5. The Minnesota statute provides a $13,000 exemption for farm machinery and equipment used by a debtor who is primarily engaged in farming. The Debtors each claimed entitlement to the full amount under the statute.

The liens sought to be avoided are in favor of First National Bank of Mahnomen (Bank) and Minnesota Department of Agriculture (MDA). Both object to the motion on grounds that: 1) the Debtors, especially Shelly Zimmel, are not farmers; 2) the Debtors significantly undervalued the liened property; and, 3) that 11 U.S.C. § 522(f)(3) limits the Debtors' lien avoidance entitlement to $5,000. Additionally, the Bank claims that it has a purchase money security interest in a 7020 John Deere tractor, one of the items of property upon which the liens are sought to be avoided.

The Debtors respond that: 1) they both are farmers, and each qualifies for the exemption; 2) the values assigned to the property are reasonably accurate; and, 3) 11 U.S.C. § 522(f)(3) does not apply to cases where Minnesota exemptions are used in bankruptcy cases. Regarding the Bank's claim to a purchase-money security interest in the 7020 John Deere tractor, the Debtors allege that the Bank released the lien or abandoned the collateral.

## II.

### FACTS.

Prior to filing, Loren Zimmel had been principally engaged in farming for seventeen years. The operation was shut down at, or shortly before, filing due to financial difficulties that precipitated the bankruptcy. Mr. Zimmel has since obtained employment as a farm hand for another farmer in the area. The Zimmel farm cropland is presently rented to a third party, but Mr. Zimmel testified that he intends to resume farming on his own as soon as financial circumstances permit.

Prior to filing, Shelly Zimmel was employed full-time off the farm at a grain elevator as a bookkeeper. The Debtors' joint federal income tax return filed for 1994 discloses that she received $15,000 from the employment, and the return lists her occupation as "bookkeeper." Ms. Zimmel testified that she historically did all the paperwork for the Zimmel farm operation and kept the books. Additionally, she testified that she regularly performed farm chores, such as feeding and caring for livestock, barn cleaning, milking etc., consuming fifteen to twenty hours per week. She plans to be similarly involved in a future Zimmel farm operation. Finally, she testified that she presently works for the grain elevator part-time.

Before August 31, 1990, the Bank held a first lien on all the property that is the subject of the Debtors' motion. On August 31, the Bank executed a subordination agreement in favor of MDA, in the amount of $12,200. The agreement included the John Deere 7020 tractor, in which the Bank had a purchase-money security interest. As a result of the subordination agreement, MDA holds a first lien in the property. The Bank holds second liens.

The balance presently due MDA is $7,270. The total amount owing the Bank is approximately $170,000. According to the Debtors' schedules, the Bank is under secured by about $70,500.

## III.

### ANALYSIS.

*Debtors As Farmers.*

Minn.Stat. 550.37, Subd. 5 provides the following exemption:

Farm machines and implements used in farming operations by a debtor engaged principally in farming, livestock, farm products, and standing crops, not exceeding $13,000 in value. When a debtor is a partnership of spouses or a partnership of natural persons related to each other within the third degree of kindred according to the rules of civil law, for the purposes of the exemption in this subdivision, the partners may elect to treat the assets of the partnership as assets of the individual.

The Bank argues that the Debtors are not entitled to the exemption because they are not farmers. The Bank claims in its prehearing brief that the Debtors do not qualify as a farmers under 11 U.S.C. § 101(20), which defines the term "farmer," as:

> (20) "farmer" means (except when such term appears in the term "family farmer") person that received more than 80 percent of such person's gross income during the taxable year of such person immediately preceding the taxable year of such person during which the case under this title concerning such person was commenced from a farming operation owned or operated by such person; . . .

In support of its position, the Bank points to the schedules filed with the petition as showing that, at filing, Loren Zimmel had no income and Shelly Zimmel's income was solely from the grain elevator employment.

■ 11 U.S.C. § 101(20), does not determine qualification of individuals for the exemption provided by Minn.Stat. 550.37, Subd. 5.[1] See: *In re LaFond*, 45 B.R. 195 (Bankr. D.Minn.1984); aff'd. 61 B.R. 303 (D.Minn. 1985), 791 F.2d 623 (8th Cir.1986). Whether a debtor qualifies for the exemption provided by Minn.Stat. 550.37, Subd. 5, depends on the debtor's historical involvement with farming and present intentions. The analysis:

> [should] take into account the intensity of a debtor's past farming activities and the sincerity of his intentions to continue farm-

ing, as well as evidence that debtor is legitimately engaged in a trade which currently and regularly uses the specific implements or tools exempted and on which lien avoidance is sought. See *Middleton v. Farmers State Bank of Fosston*, 41 B.R. 953, 955 (D.Minn.1984); *In re Yoder*, 32 B.R. 777 (Bankr.W.D.Pa.1983).

> *Production Credit Association v. LaFond*, 61 B.R. 303, 306 (D.Minn.1985).

From Loren Zimmel's undisputed testimony, he clearly qualifies for the exemption.

■ Both the Bank and MDA argue that Shelly Zimmel is not a farmer, by her own admission, and by independent evidence. They point to the Debtors' federal income tax return for 1994, which identifies Shelly as a bookkeeper; and, which discloses that she earned $15,000 in off-farm wages. They also point to *Schedule F* of the return, *Profit or Loss from Farming*, which lists only Loren Zimmel as the proprietor of the farm operation.

The tax return is relevant to the consideration, but it is not controlling. The return was prepared by a third party. While Shelly Zimmel's occupation is listed as "bookkeeper", the record does not indicate that she either caused that designation or attached any significance to it. Although she is not listed on *Schedule F* as a proprietor of the farming operation, she is listed jointly with Loren on every other schedule of the return, including *Form 4562, Depreciation and Amortization*. Nothing in the record indicates that she was aware of the omission of her name as a proprietor on *Schedule F*, or that she attributed any significance to it.

More important to the consideration, is her actual involvement in the farming operation. From her uncontroverted testimony, it is clear that Ms. Zimmel has had substantial involvement in the farm enterprise on a regular basis. She also expresses the intention of being actively involved in an anticipated future farming operation with Mr. Zimmel.

---

1. The Debtors' 1994, federal tax return discloses that all of Loren Zimmel's gross income, and 91 percent of the Debtors' joint gross income was derived from the farming operation. The reference to income in 11 U.S.C. § 101(20), relates to the taxable year immediately preceding the filing, and does not provide for the measure of income at or after filing. Accordingly, if the statute applied for purposes of determining exemption entitlement under Minn.Stat. 550.37 Subd. 5, certainly Loren Zimmel would qualify on the undisputed facts.

It has long been recognized in this district that farming operations of the type involved here are family occupations. See: *In re Pommerer*, 10 B.R. 935, 942 (Bankr.D.Minn. 1981) ("One would have to blind oneself to reality not to ... recognize that a small farm in Minnesota is a family occupation. [debtor's wife], therefore, must also be considered a farmer.") The nature of the enterprise as a family occupation has been recognized, even where one spouse has maintained full-time employment off-farm during the period under consideration. See: *In re Peters*, 60 B.R. 711 (Bankr.D.Minn.1986), where this Court found:

> The parties' Stipulation also indicates that Cynthia Peters played a significant role in the operation of the family farm, although she also had a full-time job outside the farm. Mrs. Peters helped her husband disc, drag, haul grain, operate equipment, walk beans, pick rocks and do other chores. She also took care of the book work for the farming operation, as well as a number of domestic chores necessary to the operation of the family farm. It is clear that if the Peters family farm is to continue in operation, Mrs. Peters will play a significant role in that operation. She is a farmer for purposes of exemption and lien avoidance.

*In re Peters*, at 715.

The facts here compel the same findings and conclusions regarding Shelly Zimmel. She is a farmer for purposes of exemption and lien avoidance.

## Valuation.

■ Both the Bank and MDA claim that the Debtors have significantly undervalued the property upon which the Debtors seek to avoid their liens. Testimony offered by the Bank and by the Debtors resulted in a net difference of only $200.00. MDA challenged the Debtors' representation regarding the value of one item, a Dakon digger valued by the Debtors at $950.00. The sole basis for the challenge by MDA is that the Debtors had represented the value at $3700.00 in their loan application with MDA five years ago in 1990. MDA presented no testimony regarding value.

Based on the record, the Court finds that the values represented by the Debtors are the fair and reasonable values for the items that are subject to this proceeding for lien avoidance.

## Application of 11 U.S.C. § 522(f)(3).

■ 11 U.S.C. § 522(f)(1)(B)(ii) provides the following lien avoidance remedy for debtors:

> (f)(1) Notwithstanding any waiver of exemptions, but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
>
> (B) a nonpossessory, nonpurchase-money security interest in any—
>
>> (ii) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor;

Absent application of 11 U.S.C. § 522(f)(3), the Debtors are each entitled to $13,000 lien avoidance with respect to Minn.Stat. 550.37, Subd. 5 exemptions. MDA and the Bank argue that 11 U.S.C. § 522(f)(3) limits the Debtors' lien avoidance rights to $5,000 each, even if they otherwise qualify for the full exemption amounts under the Minnesota statute.

Section 522(f)(3), enacted as part of the *Bankruptcy Reform Act of 1994*, provides:

> (3) In a case in which State law that is applicable to the debtor—
>
>> (A) permits a person to voluntarily waive a right to claim exemptions under subsection (d) or prohibits a debtor from claiming exemptions under subsection (d); and
>>
>> (B) either permits the debtor to claim exemptions under State law without limitation in amount, except to the extent that the debtor has permitted the fixing of a consensual lien on any property or prohibits avoidance of a consensual lien on property otherwise eligible to be claimed as exempt property;
>
> the debtor may not avoid the fixing of a lien on an interest of the debtor or a dependent of the debtor in property if the

lien is a nonpossessory, nonpurchase-money security interest in implements, professional books, or tools of the trade of the debtor or a dependent of the debtor or farm animals or crops of the debtor or a dependent of the debtor to the extent the value of such implements, professional books, tools of the trade, animals, and crops exceeds $5,000.

Subparagraphs (A) and (B) both must be satisfied with respect to applicable state law for the $5,000 limitation on lien avoidance to apply.

*Subparagraph (A).*

A "plain meaning" analysis of Subparagraph (A) indicates that Minnesota law does not satisfy either of its two alternatives.[2] The phrase "permits a person to voluntarily waive a right to claim exemptions under subsection (d)" has no apparent application under Minnesota law. It is unlikely that any state law permits persons to waive the right to claim exemptions under 11 U.S.C. § 522(d), since waivers of exemptions are specifically unenforceable under 11 U.S.C. § 522(e). Certainly, Minnesota has no such law. Nor does Minnesota have a law that prohibits debtors from claiming exemptions under 522(d).[3] Under a "plain meaning" analysis of Subparagraph (A), neither of its two alternative requisites are satisfied by applicable Minnesota law.

MDA and the Bank urge a different analysis. They argue that the phrase "permits a person to voluntarily waive a right to claim exemptions under subsection (d)" is intended to describe the situation in which a debtor selects the state exemptions of a state that has not opted out of the federal exemptions. According to MDA and the Bank, the absence of a state law prohibiting the use of federal exemptions, constitutes law of the state that permits a debtor to "voluntarily waive" them by selecting the state exemptions. Thus, according to MDA and the Bank, Subparagraph (A) applies whenever state law exemptions are applicable to a case.[4]

Neither creditor attempts to explain why such a simple application might be expressed in such a convoluted way. Nonetheless, the analysis has some credibility, if only from the apparent lack of any other more reasonable explanation that would give meaning to the first alternative phrase of the subparagraph.[5] But, even assuming that the interpretation of Subparagraph (A) is the correct one and the subparagraph is satisfied, neither of the alternative requisites of Subparagraph (B) is satisfied by Minnesota law.

*Subparagraph (B).*

Under Subparagraph (B), the statute is applicable in either of two instances with respect to state law. One is where the law of the state allows exemptions in unlimited amounts; while excluding from exemptions, property that is subject to consensual liens. The other instance of state law that makes the statute applicable, is where state law prohibits avoidance of consensual liens on property that is otherwise eligible to be claimed as exempt property.

MDA and the Bank concede that Minnesota does not allow exemptions in unlimited amount and, therefore, the first alternative instance does not apply. They argue that the second alternative does apply, however, asserting that Minnesota prohibits the avoidance of consensual liens on property otherwise eligible for exemption. MDA and the Bank cite *Moyer v. International State*

---

**2.** "Where statutory language is clear with a plain meaning, a court's function is then only to enforce or apply such language." *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989).

**3.** States are Allowed to opt-out of the federal exemptions provided in 522(d), by specifically prohibiting debtors from selecting 522(d) exemptions. See: 522(b)(1). Thirty-five states have opted out. Minnesota has not.

**4.** State law exemptions can be applicable to a case only if, either: 1) a debtor chooses them pursuant to 522(b)(2); or, 2) if the state opted out of the federal exemptions pursuant to 522(b)(1). Under MDA's and the Bank's interpretation of Subparagraph (A), both alternatives are covered in the subparagraph.

**5.** "[A] statute must, if possible, be construed in such fashion that every word has some operative effect." *U.S. v. Nordic Village,* 503 U.S. 30, 35, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181 (1992).

*Bank,* 404 N.W.2d 274 (Minn.1987) in support of the argument.

In *Moyer v. International Bank,* the Minnesota Supreme Court recognized that, generally, exemptions do not apply to consensual liens. The court stated the issue as "whether the exemption provided by section 550.37, subd. 12a, is applicable to security interests created pursuant to the Uniform Commercial Code." *Moyer v. International Bank,* 404 N.W.2d 274, 275. The court ruled that exemptions are not applicable to security interests under Minnesota law,[6] stating:

> [the] exemption statute does not deprive a debtor of any of the ordinary incidents of ownership of exempted property or restrict the debtor's freedom to dispose of exempted possessions as he or she wishes, except that a debtor may not grant a non-purchase money security interest in personal goods exempted under section 550.37, subd. 4. Accord, *State v. Avco Financial Service of New York, Inc.,* 50 N.Y.2d 383, 429 N.Y.S.2d 181, 406 N.E.2d 1075 (1980); *Montford v. Grohman,* 36 N.C.App. 733, 245 S.E.2d 219 (1978). See also *Hernandez v. S.I.C. Finance Co.,* 79 N.M. 673, 448 P.2d 474 (1968). Absent an express interdict of the kind which appears at section 550.37, subd. 4, the statute does not forbid a debtor to mortgage protected property and to create a lien against identified property which can be foreclosed despite the property's exempt status. *Moyer v. International State Bank,* at 276.

The Minnesota court did not discuss, or even mention, lien avoidance.

The term "lien avoidance" refers to a remedy that allows the stripping of liens in various situations. See, for example, 11 U.S.C. §§ 522(f), 544, 545, 547, and 548. Regarding exemptions, lien avoidance is a remedy that allows the stripping of certain liens from designated property to provide a debtor with an exemption that would otherwise be available to the debtor, absent the liens to be stripped. See: 11 U.S.C. § 522(f), generally; and, *Owen v. Owen,* 500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991).

The *Moyer* court simply recognized the same principles relating to exemptions that the U.S. Supreme Court later recognized and applied in *Owen v. Owen;*—that exemptions apply only to a debtor's interest in property. The *Owen* Court, discussing the application of exemptions to encumbered property under the exemption scheme of 11 U.S.C. § 522, stated:

> Property that is properly exempted under s 522 is (with some exceptions) immunized against liability for prebankruptcy debts. s 522(c). No property can be exempted (and thereby immunized), however, unless it first falls within the bankruptcy estate. Section 522(b) provides that the debtor may exempt certain property "from property of the estate"; obviously, then, an interest that is not possessed by the estate cannot be exempted. Thus, if a debtor holds only bare legal title to his house—if, for example, the house is subject to a purchase-money mortgage for its full value—then only that legal interest passes to the estate; the equitable interest remains with the mortgage holder, s 541(d). And since the equitable interest does not pass to the estate, neither can it pass to the debtor as an exempt interest in property. Legal title will pass, and can be the subject of an exemption; but the property will remain subject to the lien interest of the mortgage holder. This was the rule of *Long v. Bullard,* 117 U.S. 617, 6 S.Ct. 917, 29 L.Ed. 1004 (1886), codified in s 522. Only where the Code empowers the court to avoid liens or transfers can an interest originally not within the estate be passed to the estate, and subsequently (through the claim of an exemption) to the debtor.

*Owen v. Owen,* 500 U.S. 305, 308–09, 111 S.Ct. 1833, 1835.

The *Moyer* court was not concerned with lien avoidance. The U.S. Supreme Court was, however. The *Owen* Court went on to hold that the lien avoidance provisions of 11 U.S.C. § 522(f) applied to property that was not exempt in the first instance; and, that

---

**6.** See, however, *Production Credit Association v. Thompson,* 884 F.2d 1100 (8th Cir.1989). Apparently, the *Thompson* Court believed that the *Moyer* court held something different; but precisely what, is unclear.

the provisions applied to cases involving state exemptions. The Court said:

> We have no doubt, then, that the lower courts' unanimously agreed-upon manner of applying s 522(f) to federal exemptions—ask first whether avoiding the lien would entitle the debtor to an exemption, and if it would, then avoid and recover the lien—is correct. [FN5, *omitted*] The question then becomes whether a different interpretation should be adopted for state exemptions. We do not see how that could be possible. Nothing in the text of s 522(f) remotely justifies treating the two categories of exemptions differently. The provision refers to the impairment of "exemption[s] to which the debtor would have been entitled under subsection (b)," and that includes federal exemptions and state exemptions alike.
>
> *Owen v. Owen*, 500 U.S. 305, 312–13, 111 S.Ct. 1833, 1837–38.

A "plain meaning" comparative analysis of Minnesota law and 11 U.S.C. § 522(f)(3)(B), leads to the conclusion that the second alternative is not satisfied. While Minnesota law recognizes that exemptions do not apply to consensual liens; the law is silent regarding avoidance of consensual liens on property otherwise eligible to be claimed as exempt property.

An historical analysis of Subparagraph (B) leads to the same conclusion. The enactment of what is now 11 U.S.C. § 522(f)(3) in the *Bankruptcy Reform Act of 1994*, was the result of special interest efforts. In support of the legislation, Philip S. Corwin, *Director & Counsel, Operations and Retail Banking, American Bankers Association*, submitted a statement at hearing before the *Subcommittee on Economic and Commercial Law of the Committee on the Judiciary, House of Representatives*, that read, in part:

> Restoring the unencumbered flow of agricultural and small business credit would be greatly aided by the legislative reversal of the decision made by the Supreme Court

in the case of *Owen v. Owen* on May 23, 1991. In that case, the court held that Section 522(f) of the Bankruptcy Code, which allows a debtor to avoid certain liens if they impair an exemption to which the debtor would otherwise be entitled, applies in so-called opt-out states. Opt-out states are those which preclude them from selecting the federal exemptions provided under state law and which preclude them from selecting the federal exemptions provided in the Bankruptcy Code. Thirty-five states have laws on their books which deny debtors the use of federal exemptions.[7]

*Hearing before the Subcommittee on Economic and Commercial Law of the Committee on the Judiciary, House of Representatives, d Cong., 2d sess., August 17, 1994, U.S. Gov. Printing Office.* Mr. Corwin described the scope of the bill, in his statement, as:

> This bill, the "Secured Credit Availability Amendments of 1993", attempts to restore the status quo ante in those states which both define and limit their state law exemptions—but only with respect to non-possessory, non-purchase-money security interests in tools of the trade, implements, animals, or crops. H.R. 339 proposes to add a new subsection . . . designed to preserve a narrow category of consensual non-possessory, non-purchase-money liens from avoidance in bankruptcy . . . the main purpose of the bill is to protect agricultural lenders who take security interests in agricultural property, and to thereby preserve the availability of agricultural loans . . . While Section 313 [an earlier version of Senate amendments concerning this issue] amends Section 522(f) of the Code in a manner which eliminates the *Owen* problem in such states as Louisiana and Florida, it fails to provide the same benefit to Texas lenders and borrowers due to a technical defect. In order to overcome this defect . . . we urge the Committee to include [a new] Clause B of new paragraph 2 . . . *Id.*

---

7. Presumably, 11 U.S.C. § 522(f)(3) is not limited to opt-out states, as Subparagraph (A) seems to evidence an intent to include situations other than those in which states prohibit the use of federal exemptions. Furthermore, as discussed *infra*, the second alternative in Subparagraph (B) was included to make § 523(f)(3) applicable to Texas, which has not opted out of § 522(d) exemptions.

Louisiana and Florida are opt-out states regarding 11 U.S.C. § 522(d) exemptions. See: La.Rev.Stat.Ann. § 13.3881(B)(1); and, Fla. Stat. § 222.20. Texas is not.

In *Owen v. Owen,* 500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991), the Supreme Court ruled that a Florida constitutional exception to its homestead exemption for certain judicial liens, could not prevent application of 11 U.S.C. § 522(f), by the debtors in the case, to avoid the judicial liens on their homestead. The lower courts had all held to the contrary.

The *Owen* ruling, in addition to reversing prior bankruptcy law applied in Florida, effectively overruled previously applied bankruptcy law in Louisiana and Texas. Prior to *Owen,* the Fifth Circuit had ruled that 11 U.S.C. § 522(f) lien avoidance was not an available remedy for bankruptcy debtors, where either Louisiana or Texas state exemptions applied. See: *Bessent v. United States,* 831 F.2d 82 (1987); *McManus v. Avco Financial Services of Louisiana, Inc.,* 681 F.2d 353 (1982); and, *In re Kelly,* 133 B.R. 811 (Bankr.N.D.Tex.1991). The Fifth Circuit decisions were based on rationale that was later rejected by the *Owen* Court. 11 U.S.C. § 522(f)(3) was intended to restore the law of bankruptcy lien avoidance applied in Florida, Louisiana, Texas, and perhaps other jurisdictions, prior to *Owen v. Owen.*

The Louisiana and Florida solution, referred to in Mr. Corwin's statement, is the first alternative in Subparagraph (B) of 11 U.S.C. § 522(f)(3). Louisiana law allows unlimited amount of exemption in tools of the trade. See: La.Rev.Stat.Ann. § 13:3881(A)(2)(a) (West 1983 & Supp.1995). But the exemption is subject to the limitation that:

> No property upon which a debtor has voluntarily granted a lien shall, to the extent of the balance due on the debt secured thereby, be subject to the provisions of this Chapter or be exempt from forced sale under process of law.
>
> *Id.,* § 13.3881(B)(2).

The first alternative application described in 11 U.S.C. § 522(f)(3)(B), where state law "permits the debtor to claim exemptions without limitation in amount, except to the extent that the debtor has permitted the fixing of a consensual lien on any property," describes the Louisiana statute. It was intended to restore the law of bankruptcy lien avoidance as applied to Louisiana, and similar opt-out states, prior to *Owen v. Owen.*

The second alternative application described in 11 U.S.C. § 522(f)(3)(B), where state law "prohibits avoidance of a consensual lien on property otherwise eligible to be claimed as exempt property," specifically targets Texas law. In his statement to the *Judiciary Subcommittee,* Mr. Corwin explained:

> When the full Senate debated S. 540, Section 313 was added to address the problems created by the *Owen* decision. However, while Section 313 amends Section 522(f) of the Code in a manner which eliminates the *Owen* problem in such states as Louisiana and Florida, it fails to provide the same benefit to Texas lenders and borrowers due to a technical defect. In order to overcome this defect, we would urge the Committee to include a counterpart to Section 313 so that clause B of new paragraph 2 reads as follows: "(B) Either permits the debtor to claim exemptions under State law without limitations in amount, except to the extent that the debtor has permitted the fixing of a consensual lien on any property; **or prohibits the avoidance of a consensual lien on property otherwise eligible to be claimed as exempt.**" (addition language in boldface). *Id.*

Texas personal property exemptions (including tools of the trade) are also exclusive of liens, security interests or other charges encumbering the property. But they are further limited in amount to an aggregate value of $60,000 per family, or $30,000 for an individual debtor who is not a member of a family. See: Tex.Prop.Code Ann. §§ 42.001(a)(1), (a)(2), and 42.002(a)(4) (West 1984 & Supp.1995). Accordingly, the Louisiana solution does not apply. The Texas exemption, however, is further limited by the following provision:

> Personal property, unless precluded from being encumbered by other law, may be

encumbered by a security interest ... or ... lien fixed by other law, and the security interest or lien may not be avoided on the ground that the property is exempt under this chapter.

*Id.* § 42.002(b).

The second alternative in 11 U.S.C. § 522(f)(3)(B), describes Tex.Prop.Code Ann. § 42.002(b), and was intended to restore what had been bankruptcy lien avoidance law, as applied to Texas by the Fifth Circuit Court of Appeals, before the *Owen* decision.

*In Summary.*

*Moyer v. International State Bank,* 404 N.W.2d 274 (Minn.1987), clarifies that Minnesota law, like Louisiana, Texas and most other states, generally excepts encumbered property from exemptions otherwise allowed debtors under state law. Minnesota, like Texas, also provides for exemptions in limited amounts. Therefore, as with Texas, the Louisiana solution that is the first alternative in 11 U.S.C. § 522(f)(3)(B), does not apply. However, neither does the second alternative, the Texas solution. Unlike Texas, Minnesota law does not speak to lien avoidance.

A broader interpretation of the second alternative in 11 U.S.C. § 522(f)(3)(B), would do much more than simply "restore the status quo ante [*Owen*]...." A broader interpretation that would extend application to Minnesota, would substantially change the status quo ante *Owen.* The interplay between Minnesota state exemption laws and 11 U.S.C. § 522 had not been found to preclude lien avoidance by debtors who selected Minnesota tool of the trade exemptions prior to *Owen.* Contrary, prior to *Owen,* it was well settled law of the Eighth Circuit that the lien avoidance remedy of 11 U.S.C. § 522(f) was available to debtors who selected Minn.Stat. 550.37, Subd. 5 exemptions. See: *In re LaFond,* 45 B.R. 195 (Bankr. D.Minn.1984); aff'd. 61 B.R. 303 (D.Ct.Minn. 1985), 791 F.2d 623 (8th Cir.1986); and, *Production Credit Association v. Thompson,* 884 F.2d 1100 (8th Cir.1989). The ruling in *Owen v. Owen* did not alter the law applied to this jurisdiction.

Based on the foregoing, the Court concludes that 11 U.S.C. § 522(f)(3)(B) has no application to lien avoidance in cases where debtors select Minnesota state exemptions. Accordingly, the Debtors are not limited to $5,000, but are each entitled to the full $13,000 lien avoidance by reason of their allowable exemptions under Minn.Stat. 550.37, Subd. 5.

*Bank's Interest In The Tractor.*

■ The Bank claims that it has a purchase-money security interest in the Debtors' 7020 John Deere tractor. The Debtors respond by alleging that the Bank released its purchase money security interest by subordinating its lien to MDA's lien. The Debtors offer no explanation or theory on how the subordination resulted in a release, or change in nature, of the Bank's interest. The Debtors also claim that the Bank's security agreement covering the tractor has lapsed, but have offered no evidence of that.

The Debtors have not met their burden of proof that they are entitled to avoid the Bank's lien on the 7020 John Deere tractor, because they have not shown that the Bank's lien is a nonpurchase-money security interest.

## IV.

## CONCLUSION.

Based on the foregoing, the Court concludes that Loren Zimmel and Shelly Zimmel are each entitled to $13,000 in amount of exemptions under Minn.Stat. 550.37, Subd. 5, as tools of the trade, for lien avoidance purposes. The Court further concludes that the Debtors are entitled to avoid MDA's lien on all of the items for which lien avoidance is sought. Finally, the Court concludes that the Debtors are entitled to avoid the Bank's lien on all of the same items, except for the Debtors' 7020 John Deere tractor, which remains subject to the Bank's purchase-money security interest.

## V.

## DISPOSITION.

Accordingly, it is hereby **ORDERED:**

1) The lien of Minnesota Department of Agriculture on personal property of the Debtors identified and described in the application and loan documents generated in connection with the application by the Debtors for that certain loan from the Department of Agriculture initiated on or about May 25, 1990, in the amount of $12,200, is avoided by the Debtors under 11 U.S.C. § 522(f)(1)(B)(ii), and is unenforceable.

2) The liens of First National Bank of Mahnomen on those items of personal property of the Debtors described and identified in their motion for lien avoidance and affidavit, filed on June 14, 1995, are avoided by the Debtors under 11 U.S.C. § 522(f)(1)(B)(ii), and are unenforceable; provided, however, that the Bank's purchase-money security interest in the Debtors' 7020 John Deere tractor remains a valid enforceable lien against that item.