**In re Eugene E. MILLER, Linda L. Miller, Debtors.**

No. 06–60401.

United States Bankruptcy Court, D. Minnesota.

Aug. 28, 2007.

David C. McLaughlin, Fluegel Helseth McLaughlin Anderson & Brutlag, Ortonville, MN, for Debtors.

Gene W. Doeling, Kaler Doeling Law Office, Fargo, ND, trustee.

## ORDER ON OBJECTION TO CLAIMED EXEMPTIONS

DENNIS D. O'BRIEN, Bankruptcy Judge.

This matter came before the Court for an evidentiary hearing on the Chapter 7 Trustee's objection to exemptions claimed by the debtors in certain life insurance policies and farm equipment.[1] David C. McLaughlin appeared on behalf of the debtors, Eugene and Linda Miller. Gene W. Doeling appeared as attorney for the trustee.

At the conclusion of trial, the Court took the matter under advisement. Based upon all of the files, records and proceedings herein, the Court being now fully advised makes this Order pursuant to the Federal and Local Rules of Bankruptcy Procedure.

## I. FINDINGS OF FACT

The debtors, Eugene and Linda Miller, have been farmers for most of their adult lives, Gene for thirty-five years, and Linda for the twenty years since she married

---

1. The original objection also related to cattle and earnings, but those issues were resolved and withdrawn, respectively. Likewise, the trustee has conceded on the objection with respect to farm equipment as to debtor Eugene Miller; therefore that question only remains as to debtor Linda Miller.

Gene. For the first half of the last twenty years, Linda always maintained off-farm work in addition to her daily work in the farming operation. When the farm was as extensive as 8,000 or more acres and basically successful, Linda's off farm income was no longer necessary to support household expenses, and she participated full time on the farm and did not work off farm. In either case, she has always performed some actual and essential farm related responsibilities, such as bookkeeping, projections, marketing, delivering meals to the field, obtaining and delivering parts, driving tractor, and even various sorts of work in the field depending on the season.

In May 2005, the farming partnership between Gene and his brother dissolved under unpleasant and unfriendly circumstances. As part of a debt settlement brokered by the major secured creditor of the partnership, much of the farm equipment was liquidated, farm real property was transferred to Gene's brother, and Gene was permitted to retain some items of farm equipment—those claimed exempt by Gene and Linda in this case.[2]

Following the break up of the farm, Gene began to work exclusively with his son on his son's farming operation, Cornerstone Farms, as an employee. The trustee acknowledges that for purposes of the farm equipment exemption issue, Gene has remained and continues to be a farmer, principally engaged in farming. The equipment at issue is used by the debtors in the farming operations at Cornerstone.

At the same time in May 2005, Linda necessarily began to work off farm. She began a full time position at Cullen Home Center, and works there still, in order to pay household expenses. However, when she is not working at Cullen she works integrally for the Cornerstone Farms operation with Gene and their son, fulfilling the same duties in which she has always participated in working the family farming business.

The Millers have continued farming with Cornerstone, and have credible intentions and plausible plans to continue farming in the future, particularly with Cornerstone but also in their own capacity. Plans to put in a crop in 2008 on lands to be rented from Gene's father and from other landlords are being negotiated. Some of that land constitutes acres currently farmed by Cornerstone. An agreement to continue working with the Cornerstone Farms operation under a formal arrangement is being explored and planned. The Millers have positive, longstanding relationships with agriculture lenders and expect to obtain 2008 financing without difficulty.

The Millers filed for relief under Chapter 7 of the Bankruptcy Code on October 16, 2006. They have not attempted to put in their own crop yet because bankruptcy issues remain unresolved to date, and because they do not wish to commence a farming operation until all potential trustee interests are finally determined. The trustee objects to Linda Miller's claim of exemption in the farm equipment, and to both debtors' claim of exemption in the cash proceeds of five life insurance policies (four owned by Gene and one owned by Linda) in the aggregate amount of $5,441.77.

## II.  DISCUSSION

*Insurance Policies*

■  Section § 550.37 provides, in pertinent part:

2.  The equipment claimed exempt and at issue here includes: pivot, sprayer, gator, pickup, tools, and 2–way radios, altogether valued at $25,200.

| | |
|---|---|
| Property exempt | |
| Subdivision 1. | Exemption. The property mentioned in this section is not liable to attachment, garnishment, or sale on any final process, issued from any court. |
| Subdivision 23. | Life insurance aggregate interest. The debtor's aggregate interest not to exceed in value $4,000 in any accrued dividend or interest under or loan value of any unmatured life insurance contract owned by the debtor under which the insured is the debtor or an individual of whom the debtor is a dependent. |

*See* Minn.Stat. § 550.37.

The debtors, relying on *In re Oxford*, 274 B.R. 887, 892–893 (Bankr.D.Idaho 2002), argue that the correct interpretation of the statute is that multiple insurance policies may be properly claimed exempt as long as the combined value of all the policies does not exceed the maximum allowed amount. However, this issue has already been decided within this district as set forth in the decision *In re Guyot*, 240 B.R. 326 (Bankr.D.Minn.1999):

> The object of interpreting the Minnesota exemption statute is to ascertain and effectuate the intention of the legislature. Minn.Stat. § 645.16. When construing a statute, courts are to look first at the specific statutory language and be guided by its most "natural and obvious meaning." *State v. Dendy*, 598 N.W.2d 4, 6 (Minn.App.1999). If the language chosen by the legislature is unambiguous, the language controls. *Hersh Properties, LLC v. McDonald's Corp.*, 588 N.W.2d 728, 735 (Minn.1999).
>
> [I]n order to give proper effect to the unambiguous language "any unmatured life insurance contract," I must conclude that the "debtor's aggregate interest" refers to an aggregation of a debtor's various interests in a single life insurance contract. Such a construction elim-

inates any ambiguity in the language of the subdivision as a whole.

*Guyot*, 240 B.R. at 327.

Moreover, the Court held that an interpretation allowing the combined value of all life insurance contracts (up to the maximum amount) would "impermissibly render insignificant the disparate language" between subdivision 23 regarding aggregate interest in "any" life insurance contract and subdivision 24 regarding aggregate interest in "all" retirement and pension plans, and would "supply language that the legislature purposely omitted or inadvertently overlooked." *Guyot*, 240 B.R. at 327–328. "In order to give proper effect to both the language of the subdivision at issue and the statute as a whole ... the Debtors each may exempt only a single life insurance policy ... in accordance with Minn.Stat. § 550.37 Subd. 23." *Id.* at 328.

*Farm Equipment*

■ Section § 550.37 provides, in relevant part:

| | |
|---|---|
| Subdivision 5. | Farm machines. Farm machines and implements used in farming operations by a debtor engaged principally in farming, livestock, farm produce, and standing crops, not exceeding $13,000 in value. When a debtor is a partnership of spouses or a partnership of natural persons related to each other within the third degree of kindred according to the rules of the civil law, for the purposes of the exemption in this subdivision, the partners may elect to treat the assets of the partnership as assets of the individual partners. |

*See* Minn.Stat. § 550.37.

■ "Whether a debtor qualifies for the exemption provided by Minn.Stat. 550.37, Subd. 5, depends on the debtor's historical involvement with farming and present in-

tentions." *See In re Zimmel*, 185 B.R. 786, 789 (Bankr.D.Minn.1995). "The analysis should take into account the intensity of a debtor's past farming activities and the sincerity of his intentions to continue farming, as well as evidence that the debtor is legitimately engaged in a trade which currently and regularly uses the specific implements or tools exempted." *Id.*, citing *Middleton v. Farmers State Bank of Fosston*, 41 B.R. 953, 955 (D.Minn.1984); *In re Yoder*, 32 B.R. 777 (Bankr.W.D.Pa.1983); *Production Credit Association v. LaFond*, 61 B.R. 303, 306 (D.Minn.1985).

"It has long been recognized in this district that farming operations of the type involved here are family occupations." *Zimmel*, 185 B.R. at 790, citing *In re Pommerer*, 10 B.R. 935, 942 (Bankr. D.Minn.1981) (One would have to "blind oneself to reality not to recognize that a small farm in Minnesota is a family occupation." Debtor's wife, therefore, must also be considered a farmer.) "The nature of the enterprise as a family occupation has been recognized, even where one spouse has maintained full-time employment off-farm during the period under consideration." *Zimmel*, 185 B.R. at 790, citing *In re Peters*, 60 B.R. 711 (Bankr. D.Minn.1986).

The Miller situation is easily distinguishable from the circumstances of *In re Hintzman*, 2007 WL 80964 (Bankr. D.Minn.2007), decided earlier this year. In that case, the debtors "owned no real estate, rented no crop or pasture land, had no livestock, no crops, and no farming inventory." *Id.* The *Hintzman* debtors had "not been able to take any significant steps to become 'engaged principally in farming' since the filing of the case". *Id.* Significantly, they were "unable to even predict when, if ever, they might be in a position to become 'engaged principally in farming.'" *Id.*

By contrast, Gene and Linda Miller own the farm homestead property. Gene is a lifelong farmer. Linda has farmed for twenty years. They are both actively engaged in farming with a close family member, their son, who is a novice and requires their regular and ongoing experience, expertise and participation in all areas of operating Cornerstone Farms. They have used and both continue to use the farm equipment at issue in this case as part of their family farming activity with Cornerstone.

In addition, besides their son, the Millers have other reliable resources from which to stay actively and principally engaged in the business of farming. Gene's father is also a farmer, owns farmland, and is willing and able to lease land to farm to both Gene and Cornerstone. Moreover, Gene has a long history of favorable relationships with farm landlords and ag-lenders. Far from being able to predict when, if ever, they will return to farming, the Millers are in fact farming and as soon as all outstanding bankruptcy issues are resolved, they will formalize pending agreements to rent acres to put in a crop and to continue farming with Cornerstone Farms.

Linda's role remains unchanged since prior to the dissolution of Gene's farm partnership with his brother. Regardless of her off farm employment, her contributions to the farming operations with her son and husband remain more or less constant. Notably, while the Court would conclude that both Gene and Linda are engaged principally in farming for purposes of the exemption were that the question, the fact that the trustee has conceded the matter with respect to Gene essentially determines the matter with respect to Linda under the circumstances. They have farmed and continue to farm together, in varying degrees as conditions demand, but always together.

■ Off farm work, even "full time" off farm work, as common as it is for most farm wives, does not necessarily, and does not in this case, indicate disengagement from the farming operation. Linda Miller is a farmer engaged principally in farming for purposes of the Minn.Stat. § 550.37 exemption.

### III. DISPOSITION

IT IS HEREBY ORDERED:

1. The debtors' claimed exemption in farm equipment is ALLOWED and the objection thereto OVER-RULED;

2. The debtors' claimed exemption in the aggregate value of multiple life insurance policies is DENIED and the objection thereto is SUS-TAINED; and

3. The debtors shall file, within 20 days, amended claims of exemption in only one life insurance policy each, up to the statutory maximum of $8,000.